OPINION
{¶ 1} Defendant-appellant, John V. Edinger, has filed this appeal from the judgment of the Franklin County Court of Common Pleas finding him guilty of one count of rape, in violation of R.C. 2907.02, and one count of gross sexual imposition, in violation of R.C. 2907.13.
 {¶ 2} On August 25, 2003, defendant was arrested and charged by affidavit in the Franklin County Municipal Court with one count of rape alleging that, between April 1, 1999 and May 3, 2000, defendant digitally penetrated the vagina of the minor child, "P.S.,"[1] whose date of birth was March 20, 1997. Defendant posted bond two days later. On September 2, 2003, defendant waived preliminary hearing, and the case was bound over and assigned common pleas case No. 03CR-08-6025.
 {¶ 3} On September 4, 2003, the Franklin County Grand Jury indicted defendant in case No. 03CR-09-6048 with seven counts of rape. The first three counts alleged that, between April 1, 1999 and May 3, 2000, defendant digitally penetrated the vagina of P.S. Counts four through seven alleged that, between April 1, 1999 and May 3, 2000, defendant engaged in vaginal intercourse with P.S.
 {¶ 4} On August 3, 2004, defendant filed a motion requesting that the court order a psychological and competency evaluation of the minor child. The trial court held a hearing on defendant's motion on August 24, 2004. At that time, the prosecutor represented to the court that the minor child would not be called as a witness. The trial court overruled defendant's request for both the psychological and competency evaluations, and the minor child was not called as a witness at trial.
 {¶ 5} On November 1, 2004, defendant filed a motion to dismiss all the charges on the basis that his statutory rights to a speedy trial had been violated. The trial court overruled defendant's motion.
 {¶ 6} Following the state's presentation of evidence, defendant filed a motion for judgment of acquittal pursuant to Crim.R. 29 on the grounds that the state had not presented sufficient evidence. That motion was overruled. The trial court submitted two counts to the jury instead of seven. The trial court found that the state had only presented evidence as to one count of digital penetration and one count of vaginal penetration. The jury found defendant guilty of count one, rape by digital penetration, and further found that the defendant used force in committing the offense. Additionally, as to count two, the jury found defendant guilty of the lesser-included offense of gross sexual imposition. The trial court sentenced defendant to a prison term of ten years to life on count one and a term of one year on count two to run concurrent to the term of imprisonment imposed on defendant in count one. Furthermore, defendant was classified as a sexually oriented offender.
 {¶ 7} The state presented the following evidence. In August 2003, Belinda Smith, P.S.'s mother, learned from P.S.'s father that P.S. had informed him that "someone had been messing with her in a sexual manner." (Tr. 51.) As a result, Belinda contacted the police and was advised to take P.S. to Children's Hospital.
 {¶ 8} Gail Horner, a pediatric nurse practitioner at the Child Advocacy Center ("CAC") located in Children's Hospital, testified concerning the procedures used by CAC when there is a report of child sexual abuse and further testified concerning P.S.'s referral. Ms. Horner testified that she has been employed by Children's Hospital for 24 years and that she has been a pediatric nurse practitioner for nine years. (Tr. 55-56.) She stated that, when a child first presents at the CAC, the child's medical history is obtained from the child's parent, and the child is weighed and measured. Thereafter, the child is taken to a separate room to play while additional information is gathered from the parent so that the nature of the family situation and the alleged abuse can be discerned. At the same time, a social worker is present with the child, initially building rapport, placing the child at ease, and assessing the child's ability to talk about what happened. According to Ms. Horner's testimony, the process of obtaining the child's history is necessary to accurately diagnose the child and to determine the necessary treatment for the child. (Tr. 57-59.)
 {¶ 9} Following the interview of the child, Ms. Horner performs a complete physical examination of the child and performs whatever tests are warranted based upon the information provided by the child and the parent.
 {¶ 10} In the present case, P.S. was taken to CAC on August 19, 2003. During her conversation with the social worker, P.S. identified three men who had touched her in a sexual manner. P.S. differentiated between the three men and was able to provide their names. P.S. identified defendant as her mother's former boyfriend and told the social worker that defendant "touched her private parts with his mouth and bird when he thought she was asleep * * * he would roll her over and she would pretend to be asleep." (Abuse Examination Addendum.) P.S. pointed to a penis and called it a "bird."
 {¶ 11} Ms. Horner testified that she performed a complete physical examination of P.S. and that, during her colposcopic examination, P.S.'s genital area was "normal." Ms. Horner testified that the exam results were not inconsistent with the history P.S. gave because it is possible for a child of P.S.'s age to be sexually assaulted in the manner in which she described and yet show no signs of physical trauma. (Tr. 63-64.)
 {¶ 12} Belinda Smith testified further that defendant had lived with her and her children on Manchester Avenue in Franklin County, Ohio, between April 1999 and May 2000. According to Belinda's testimony, defendant took care of the children at times, defendant had permission to discipline P.S., and defendant was a parental figure to P.S. Belinda testified further that P.S. was occasionally left alone with defendant. (Tr. 48-50.)
 {¶ 13} Based upon both Belinda's and P.S.'s statements, Detective Michael Kyde of the Columbus Police Department interviewed defendant at his home. Defendant admitted that he knew Belinda and P.S., and that he had lived with Belinda, P.S., and Belinda's other children for approximately one year, during which time he was Belinda's fiancée. (Tr. 81-82.) Detective Kyde then informed defendant of the allegations P.S. had made against him. At first, defendant denied that anything had happened; however, by the end of the interview, defendant admitted that he had touched P.S. in the sexual manner as she had described. (Tr. 82-83.) Specifically, defendant admitted that P.S. had come into his bed on at least one occasion when he was naked. When asked if he was erect, defendant responded, "You know how we get at night." (Tr. 84.) Detective Kyde then indicated that defendant stated further that P.S. "might have cuddled up against him and that his penis may have made contact with her vaginal or anal opening area." (Tr. 85.)
 {¶ 14} Detective Kyde testified further that, during the course of his interview with defendant, defendant ultimately acknowledged that he was awake when P.S. was in bed with him, that he was erect, that he rubbed his erect penis against P.S.'s vaginal area, near and around P.S.'s anus, and between the lips of her vagina. (Tr. 85-93.) Detective Kyde testified further that defendant also admitted to inserting his finger inside P.S.'s vagina. Defendant first indicated that, while giving P.S. a bath, the washcloth accidentally slipped off of his hand, causing his hand to make contact with her. However, defendant later admitted that the digital penetration occurred outside of the bathroom while in the bedroom. Detective Kyde then traced defendant's right hand on a piece of paper and asked defendant to mark which finger he inserted into P.S.'s vagina and to draw a line indicating how much of his finger actually penetrated P.S. Defendant placed a mark on his right index finger indicating that he had inserted approximately one-half inch of that finger into P.S.'s vagina. (Tr. 87-93.)
 {¶ 15} Detective Brad Sheline of the Columbus Police Department testified that he interviewed defendant at the Columbus Police Headquarters and that the interview was videotaped. Defendant's videotaped interview with Detective Sheline was played for the jury. (Tr. 101-121.) Defendant admitted again that he had rubbed his penis against P.S.'s vaginal area and that he placed his finger inside her vagina. Thereafter, defendant was arrested on August 25, 2004. Defendant told Detective Sheline that "I was going through a lot of stress and a hard time and everything, and it just happened. * * * And it wasn't like, you know, I forced myself on her and she was screaming and yelling or anything like that. I mean, it — just happened." (Tr. 106.)
 {¶ 16} Defendant indicated further that he regretted what had happened and that he had tried to forget about it. As a police officer in Laurelville, defendant indicated that he had dealt with similar situations, which had brought back memories to him of what he had done to P.S. (Tr. 107-108.)
 {¶ 17} Detective Sheline asked defendant if he had been truthful when he spoke to Detective Kyde, and defendant responded, "Yes. On what I did to [P.S.] and everything. * * * I wish I never did that to [P.S.] because if I never did I wouldn't be here now." (Tr. 116.) Near the end of the interview, defendant stated, "I didn't make her bleed or rip her or anything like that. I was kind of, like, just exploring, you know, being real gentle, exploring. I shouldn't be doing that to begin with. * * * But I did." (Tr. 119-120.)
 {¶ 18} At the end of Detective Sheline's testimony, the state rested. Defendant made a motion for judgment of acquittal, pursuant to Crim.R. 29, based upon the following three arguments: (1) the state failed to present sufficient evidence of the corpus delicti of the crime; (2) pursuant to Crawford v. Washington
(2003), 541 U.S. 36, 124 S.Ct. 1354, P.S.'s statements to the social worker should not have been admitted into evidence; and (3) P.S.'s statements to the social worker should not have been admitted into evidence because they did not qualify under Evid.R. 803(4). Except for the fact that the trial court acknowledged that the evidence presented by the state only showed one act of digital penetration and one act of vaginal intercourse, in all other respects, the trial court overruled defendant's motion, and ultimately two counts were submitted to the jury for its determination. Defendant was found guilty on both counts.
 {¶ 19} Appellant asserts the following assignments of error on appeal:
I. The trial court erred in overruling Defendant's motion to dismiss based upon the State of Ohio's violation of Defendant's right to a speedy trial as articulated in R.C. § 2945.71, §2945.72, and § 2945.73.
II. The trial court violated Defendant's right to confrontation as guaranteed by the Sixth Amendment to the United State's Constitution, and Section 10, Article I of the Ohio Constitution, by admitting into evidence the out of court declarations by the victim [P.S.].
III. The trial court erred in admitting [P.S.'s] out of court declarations contrary to the Rules of Evidence.
IV. The trial court erred by admitting into evidence Defendant's statements to police.
V. The trial court erred in overruling Defendant's motion for judgment of acquittal pursuant to Criminal Rule 29.
 {¶ 20} In his first assignment of error, defendant contends that the trial court erred by overruling his motion to dismiss the charges against him on the basis that the state of Ohio had failed to bring him to trial within 270 days as required by law. Defendant contends that he made a prima facie showing that his speedy trial rights were violated and that the state failed to present sufficient evidence to rebut his evidence. For the reasons that follow, this court disagrees.
 {¶ 21} It is undisputed that the state of Ohio is required to bring a criminal defendant to trial within 270 days. However, it is also undisputed that a defendant can waive his speedy trial rights, so long as the waiver is made knowingly, voluntarily, and intelligently. For a waiver to be knowingly, the defendant must understand the nature of the charges against him, as well as know exactly what is being waived and the extent of that waiver. SeeState v. Adams (1989), 43 Ohio St.3d 67.
 {¶ 22} In the present case, the record shows that defendant was arrested on August 25, 2003. His trial was scheduled for January 21, 2004. On that day, defendant and counsel both signed an entry continuing the trial until March 25, 2004. On that form, defendant indicated that he was knowingly waiving his speedy trial rights. Thereafter, on March 25, 2004, defendant and counsel signed another entry rescheduling the case until June 15, 2004. Defendant again waived his speedy trial rights. On June 15, 2004, defendant and his counsel signed another entry continuing the matter until August 24, 2004. Defendant again waived his speedy trial rights. On August 24, 2004, defendant and his trial counsel signed another entry continuing the matter until October 6, 2004. Defendant again waived his speedy trial rights. Defendant's trial began on November 2, 2004.
 {¶ 23} A review of the record indicates that defendant knowingly waived 260 days. Of the remaining days from the date of arrest to when the trial began, defendant did not waive 199 days. In the present case, a total of 459 days passed from the date of defendant's arrest to the day his trial began. Defendant waived 260 of those days and, as such, he was brought to trial by the state of Ohio in 199 days. As such, defendant's right to be brought to trial within 270 days was not violated, and the first assignment of error is overruled.
 {¶ 24} This court will next address defendant's fourth assignment of error, wherein defendant asserts that the trial court erred in permitting the state to introduce his confession. Defendant contends that the state of Ohio had not presented sufficient evidence of the corpus delecti of the crime prior to introducing his confession. For purposes of this assignment of error, this court is not considering the statements which P.S. made to the social worker and which were brought into evidence through the social worker's testimony. For the following reasons, even without P.S.'s statements being brought into evidence, this court finds that defendant's fourth assignment of error is not well-taken and is overruled.
 {¶ 25} Before the state may introduce any alleged confession by the defendant, the state must provide some evidence that a crime has occurred, independent of the defendant's confession. This rule was articulated in State v. Maranda (1916),94 Ohio St. 364, the syllabus of which reads as follows:
1. By the corpus delicti of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act.
2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie
case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged.
(Emphasis sic.)
 {¶ 26} In State v. Edwards (1976), 49 Ohio St.2d 31, the Supreme Court of Ohio noted the historical origins of the corpus delecti rule and pointed out that, in light of the current procedural safeguards protecting the due process rights of criminal defendants, the corpus delicti rule is supported by few practical or social-policy considerations. As such, the court noted that there was little reason to apply the rule with "dogmatic vengeance." The burden upon the state to provide some evidence of the corpus delecti is minimal. Id. at 36. State v.Van Hook (1988), 39 Ohio St.3d 256. Furthermore, the state does not need to provide direct and positive proof that a crime was committed. The state may rely upon circumstantial evidence in proving the corpus delecti. "[T]here must be some proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed." (Emphasis sic.) State v. Nobles (1995), 106 Ohio App.3d 246, 262, citingMaranda, supra, at 371.
 {¶ 27} In this assignment of error, defendant contends that, apart from his confession, the state presented no evidence which would satisfy the requirements of Maranda. Specifically, looking at the statements P.S. made to the social worker, defendant argues that her statements never mentioned any act of digital penetration, nor vaginal intercourse. However, defendant appears to misunderstand the type and quantity of evidence required to establish the corpus delecti of a crime so that the confession comes into evidence.
 {¶ 28} In the present case, excluding P.S.'s statements, the state presented the following evidence. P.S.'s date of birth is March 20, 1997, and she would have been between two and three years of age at the time that the alleged crime took place. P.S. was not defendant's spouse. The defendant lived with P.S., her mother, and her siblings on Manchester Avenue during the relevant time period (April 1999 to May 2000). In August 2003, P.S. made statements to her father which prompted her father and her mother to call the police. P.S.'s mother called the police, and, based upon the information which was conveyed to the police, P.S.'s mother was referred to Children's Hospital. P.S. was seen at Children's Hospital and, based upon the statements P.S. made, a complete physical examination was conducted, and P.S. was tested for sexually transmitted diseases.
 {¶ 29} In State v. Ledford (Jan. 24, 2000), Warren App. No. CA99-05-014, the Twelfth District Court of Appeals considered whether the state had proved the corpus delicti of the crime where the defendant was charged with raping a five-year-old boy. The boy, who did not have any physical signs of abuse, had told his mother that the defendant had sucked on his penis. When later questioned by the police, the defendant admitted that he had done it. At trial, the boy recanted his testimony and testified that defendant had not touched him or harmed him in any manner. In ultimately finding that the state had satisfied the corpus delecti requirement, the court specifically noted that the state had provided testimony that the boy was six years old at the time of the offense and not the defendant's spouse. There was testimony that the boy had spent the night at the defendant's apartment at the time of the offense. The boy's mother testified that the boy made a statement to her which caused her to call the police and then take the boy to the hospital where she had him examined, including his private area. The court found that such evidence was sufficient to circumstantially prove that a crime had been committed and that it satisfied the corpus delecti requirement for the rape charge.
 {¶ 30} In State v. Schauer (May 15, 2000), Pickaway App. No. 99CA17, the defendant was charged with raping his 15-year-old daughter by inserting his finger into her vagina. The defendant admitted that he had told his daughter to take off all of her clothing, that he had whipped her with a belt, and that he had inserted his finger into her vagina three times. At trial, the daughter refused to discuss the events that occurred and insisted that she had lied when she had said that the defendant had inserted his finger into her vagina. Ultimately, the Fourth District Court of Appeals determined that the victim's statements were inadmissible under Evid.R. 803(4), on the grounds that her motives in speaking with the physician reflected that her state of mind was not that of a patient seeking diagnosis or treatment. However, with regard to the defendant's corpus delicti argument, the court found that it was immaterial that the victim's statements were not admissible. The court found that the state presented sufficient evidence of the corpus delicti, as follows. The victim's sister heard her screaming and called the police. The victim said that she was afraid of the defendant. The victim said that the defendant had made her remove her underpants as he read a sexually explicit letter she had written to her boyfriend. The police told the victim to go to the emergency room after they spoke with her. The police testified that the defendant and the victim's stories were similar. The physician testified that, after his interview with the victim, he felt prompted to ask her about a pelvic examination. The court found this evidence satisfied the corpus delecti requirement relative to the rape charge of digital penetration.
 {¶ 31} Likewise, in State v. Close, Washington App. No. 03CA30, 2004-Ohio-1764, the defendant was indicted on charges of rape, gross sexual imposition, importuning, and sexual imposition with his stepdaughter. The victim testified that she left a letter in her aunt's van asking for help for her and her 13-year-old sister. As a result of the letter, the victim spoke with a detective and with Chidren's Services. A caseworker and sheriff also spoke with the victim's sister regarding certain actions of the defendant when she was 12 years old. When the defendant was interviewed by the police, he acknowledged that he occasionally made a joke of touching the girls' breasts or bottoms, asking them to show him their breasts and perhaps grabbing their crotch or breast while wrestling. When confronted by a comment that one of his stepdaughters made, the defendant admitted that, on one occasion, he had kissed his stepdaughter's breasts, legs, belly and crotch when she was 12 years old. The defendant admitted that his stepdaughter was naked at the time and that he probably touched her vagina with his fingers and lips. The defendant maintained, however, that he had never had intercourse with either of his stepdaughters. At trial, one stepdaughter testified that none of the things she wrote in the letter or reported to investigators ever happened, and the other stepdaughter testified that the acts were actually perpetrated by her biological father and not the defendant. Although the Fourth District Court of Appeals found that it was improper for the state to use the victim's statements to impeach them, the court found that the error was harmless and did not amount to plain error. With regard to the defendant's argument that the corpus delecti had not been established, the court noted that the following evidence satisfied the corpus delecti requirement. One of the girls wrote a letter asking for help. As a result of that letter, the one stepdaughter was taken out of the home and interviewed by a detective and Children's Services. Within three days, Children's Services required that the mother implement a safety plan for the children and required the defendant to stay out of the home. As a result of the letter, the other stepdaughter was interviewed. As a result of all of the above, the defendant was interviewed. The court found that this was sufficient evidence to satisfy the corpus delecti requirement.
 {¶ 32} Based upon the above case law, this court finds that the trial court was correct in concluding that the state had presented sufficient evidence of the corpus delecti of the crime and that defendant's confession properly came into evidence. The state presented evidence that P.S. was between two to three years old at the time, that she was not defendant's spouse, that she lived in a home with defendant during the relevant time period, that she made certain comments to her father which prompted her father and her mother to contact the police, that the police referred them to Children's Hospital, and that thereafter she was examined by a medical professional. That evidence is sufficient, without even considering P.S.'s statements to the social worker, to satisfy the corpus delicti requirement, and defendant's fourth assignment of error is not well-taken and is overruled.
 {¶ 33} Turning next to defendant's fifth assignment of error, that the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal, this court finds that defendant's fifth assignment of error is overruled in part and sustained in part as more fully explained below.
 {¶ 34} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v.Bridgeman (1978), 55 Ohio St.2d 261, the syllabus of which reads:
Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
 {¶ 35} Our standard of review in a claim that a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 36} Gross sexual imposition is defined in R.C. 2907.05, as follows:
(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
* * *
(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of the person.
 {¶ 37} Rape is defined in R.C. 2907.02, as follows:
(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
* * *
(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force or if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life. * * *
 {¶ 38} Sexual conduct, sexual contact, and sexual activity are defined in R.C. 2907.01, as follows:
(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however, slight, of any part of the body or an instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
(C) "Sexual activity" means sexual conduct or sexual contact, or both.
 {¶ 39} Force is defined in R.C. 2901.01(A)(1), as follows:
"Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
 {¶ 40} First, considering this assignment of error without including P.S.'s statements made to the social worker, this court finds that the trial court did not err in overruling defendant's motion for judgment of acquittal as to the charge of gross sexual imposition. Without considering P.S.'s statements to the social worker, we are left with defendant's confession to the police. Defendant admitted that he rubbed his penis against P.S.'s vaginal area between her labia and around her buttocks. This meets the definition of gross sexual imposition as defined in R.C. 2907.05.
 {¶ 41} Considering the rape conviction, without considering P.S.'s statements, this court likewise finds that, by defendant's confession, there was sufficient evidence to find him guilty of rape. Defendant admitted that he placed his finger inside P.S.'s vagina. Under R.C. 2907.01 and 2907.02, insertion, however slight, of any part of the body into the vaginal cavity of another is sufficient to complete vaginal intercourse. As such, the trial court did not err in overruling defendant's motion for judgment of acquittal as to the rape charge, and this court finds that the evidence is sufficient to sustain the conviction.
 {¶ 42} However, in the present case, the jury also found defendant guilty of using force in the commission of that rape. This court disagrees.
 {¶ 43} The Supreme Court of Ohio addressed the issue of what constitutes force in State v. Eskridge (1988),38 Ohio St.3d 56, wherein the defendant was convicted of raping his four-year-old daughter by force. The court stated as follows in the first paragraph of the syllabus:
The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (Statev. Labus [1921], 102 Ohio St. 26, 38-39.)
 {¶ 44} In Eskridge, the defendant had removed the child's underpants and laid her on the bed. The court found that these were both acts of compulsion and constraint, which are independent of the act of rape.
 {¶ 45} In State v. Dye (1998), 82 Ohio St.3d 323, the court held, in the syllabus, as follows:
A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.
 {¶ 46} In Dye, the court found that the defendant had been an important figure of authority in the life of the nine-year-old boy, that the boy's mother had told him to mind the defendant and not to aggravate him, and that the defendant had told the boy that he had to keep the sex a secret.
 {¶ 47} In State v. Stokes (1991), 72 Ohio App. 735, the child was eight years old, and the defendant was her father. The court found that, with the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required where the parties are more nearly equal in age, size and strength. The child had testified that the defendant had hurt her and that she had asked him to stop; however, the defendant told her to be quiet and threatened that he would hurt her mother if she ever told what happened. The court found that the element of force was met in that case.
 {¶ 48} This court addressed a similar situation to the present case in State v. Jackson, Franklin App. No. 02AP-289, 2003-Ohio-37. In that case, the defendant and the child's mother were living together. The child was eight years old. The child was sitting on the bed naked and testified that the defendant looked at her "peepee," and that he put his finger in her peepee.
 {¶ 49} The jury had convicted the defendant of rape and found the defendant guilty of using force in the commission of that rape. This court found that the element of force was not met. Specifically, this court noted that there was no evidence of a parent-child relationship between the child and the defendant, and that there was no evidence that the defendant had moved the child or held her down when he inserted his finger into her vagina. Further, this court noted that the child was already undressed and naked, and there was no evidence that the defendant removed any of the child's clothing. This court found that:
* * * While this court recognizes the offense of rape is an act of force and violence in and of itself, the courts have made it clear that, in order to sustain a rape conviction of a child under thirteen with the additional element of force, there must be some force or compulsion in addition to the act of rape itself in order to sustain a conviction with the added element of force. * * *
 {¶ 50} In the present case, we do have some evidence that defendant had the authority to discipline the children. However, unlike the situation in Dye, we have no evidence that P.S. was ever told to obey defendant. Furthermore, based upon defendant's statements to the police, there was no evidence that P.S. was dressed at the time that defendant inserted his finger into her vagina, that he removed her clothing, or that he took any action to restrain her at all. Further, unlike the other cases, there is no evidence that defendant told P.S. not to tell anyone about what he had done. As such, considering this assignment of error without the benefit of P.S.'s statements, this court finds that the element of force was not met.
 {¶ 51} Furthermore, even considering P.S.'s statements to the social worker, this court likewise finds that the element of force was not established, relative to the rape count, in the present case. According to P.S.'s statements, defendant rolled her over and touched her private parts with his mouth and "bird" while she pretended to be asleep. P.S.'s foregoing statement did not describe an act of digital penetration. As such, there was no evidence presented to support the finding of force relative to the rape charge.
 {¶ 52} Based on the foregoing, this court finds that defendant's convictions for gross sexual imposition and rape are supported by the evidence; however, this court finds that there was not sufficient evidence of force presented for reasonable minds to find the additional element of force. As such, defendant's fifth assignment of error is overruled in part and sustained in part, and the matter must be remanded to the trial court to resentence defendant in light of the finding that there was not sufficient evidence of force.
 {¶ 53} In his third assignment of error, defendant argues that the admission of P.S.'s statements to the social worker was contrary to the rules of evidence. Specifically, defendant asserts that the case law from State v. Chappell (1994),97 Ohio App.3d 515, and State v. Woods, Cuyahoga App. No. 82789,2004-Ohio-2700, have interpreted Evid.R. 803(4) in such a manner that P.S.'s statements to the social worker should have been excluded. Defendant further asserts that P.S.'s statements to the social worker should have been excluded in the absence of the trial court's first determining whether P.S. was competent to testify.
 {¶ 54} Evid.R. 803(4) provides, as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(4) Statements for purposes of medical diagnosis or treatment
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
 {¶ 55} It is well-settled in Ohio that statements made for the purposes of medical diagnosis or treatment are admissible under Evid.R. 803(4). See State v. Boston (1989),46 Ohio St.3d 108, and State v. Dever (1992), 64 Ohio St.3d 401. In Boston,
the Supreme Court of Ohio held, as follows:
Evid.R. 803(4) extends the common-law doctrine to admit statements made to a physician or medical attendant without regard to the purpose of the examination or the need for the patient's history. In other words, the patient's statements are admissible even though made to a physician consulted for the purpose of enabling the doctor to testify and even when no treatment is contemplated. Staff Note to Evid. R. 803(4).
Evid. R. 803(4), effective July 1, 1980, permits the admission of three types of patient statements: (1) medical history, (2) past or present symptoms, pain or sensations, and (3) description of the inception or general character of the cause or external source of the disease or injury. These statements, to be admissible, must be made by the patient for purposes of medical diagnosis or treatment. Furthermore, all three types of statements are admissible only where they are "* * * reasonably pertinent to diagnosis or treatment."
Id. at 121.
 {¶ 56} In Boston, the court also specifically noted the dilemma of whether Evid.R. 803(4) should apply to a statement made by a child to a psychologist, counselor, social worker, minister, etcetera, and whether such statements would be admissible under the medical diagnosis or treatment exception. The court specifically pointed out that Evid.R. 803(4) provides that the statements must be made for the purpose of medical diagnosis or treatment.
 {¶ 57} In Chappell, the defendant was convicted of kidnapping and raping a nine-year-old child. At issue was whether or not the statements the child made to a social worker, who was employed by the Clarke County Department of Human Services, identifying the defendant were admissible. The court determined that it needed to consider whether or not, under the circumstances of that particular case, the social worker's testimony was admissible under Evid.R. 803(4). In considering this question, the court noted as follows:
We would not adopt a rigid rule as to what constitutes "diagnosis and treatment" or limit diagnosis and treatment to licensed physicians, as such a narrow holding would undercut the function of nurses, psychiatrists, therapists, and various individuals who treat victims of sexual abuse. We are equally not prepared to hold that a social worker by merely being a social worker is automatically included in the category of individuals who can render treatment or diagnose sex abuse victims. Theinclusion of a social worker into this select group of careproviders must depend on her function. Where a social worker's function does not include diagnosis or treatment (whether it be mental or physical treatment of a child sex abuse victim), any statement made to the social worker cannot be admissible under the exception to the hearsay rule in Evid.R. 803(4). * * *
Chappell, at 530-531 (emphasis added).
 {¶ 58} The court looked at the social worker's testimony to determine what her "function" was for purposes of determining whether the child's statement to her could be interpreted as being for diagnosis or treatment. Based upon the social worker's testimony, the court concluded that the function of that particular social worker was neither for diagnosis nor treatment, but it was to determine whether further investigation was warranted. As such, the court found that the statements made by the child were not admissible under Evid.R. 803(4).
 {¶ 59} In Woods, supra, the defendant was convicted of kidnapping, gross sexual imposition, and rape regarding an 11-year-old child. The child in that case was interviewed by a social worker employed by the Cuyahoga County Department of Children and Family Services. On appeal, the defendant had argued that the child's statements to the social worker should not have been admitted under Evid.R. 803(4). The court again stressed that, in determining this issue, courts need to "look to the function of the social worker to determine whether the victim's statements could be interpreted as being for diagnosis or treatment." Woods, at ¶ 11.
 {¶ 60} The Woods court noted that the social worker was employed by Children and Family Services, that he was responsible for investigating allegations of child sexual abuse and making appropriate recommendations for medical intervention and/or other forms of intervention, that he coordinated his interview with the police department, and that the police were either present during the interview or observed the interview.
 {¶ 61} The court noted that, while the goal of protecting the child is laudable, the presence of the police officer undermines the confidentiality and detracts from the goal of identifying whether the child exhibits signs of sexual abuse that would require treatment. Although the social worker did identify the need for social services and referred the child to a clinic, the court found that that was only arguably consistent with diagnosis or treatment.
 {¶ 62} As the decisions in Chappell and Woods indicate, this court must look to the function of this particular social worker to determine whether or not it was permissible for her to testify concerning P.S.'s statements under Evid.R. 803(4). For the following reasons, we find that, given the facts of this case, the testimony was permissible under Evid.R. 803(4).
 {¶ 63} First, unlike the children in both Chappell andWoods, who were interviewed by social workers employed by the county, P.S. was interviewed by a social worker specifically employed by Children's Hospital in the Child Advocacy Center, which is a part of Children's Hospital itself. Secondly, the social worker testified that the interview with the child was solely for the purposes of medical treatment and diagnosis. In the present case, the role of the social worker did not involve reporting to the police and did not involve decisions to remove the child from the home. The stated function of the social worker was specifically for medical treatment and diagnosis. While it is true that the police were permitted to observe the interview by way of closed circuit television, the police did not contact the social worker to set up the interview as happened in the Woods
case, nor was the child aware of their presence.
 {¶ 64} Because this court finds the specific facts of this case distinguishable from both Chappell and Woods, this court finds that the social worker was permitted to testify concerning P.S.'s statements made to her.
 {¶ 65} Defendant also contends that the trial court abused its discretion by admitting P.S.'s statements to the social worker without first holding a hearing to determine P.S.'s competency. For the following reasons, this court disagrees.
 {¶ 66} Evid.R. 601 relates to the general rules of competency and provides, in pertinent part, as follows:
Every person is competent to be a witness except:
(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.
 {¶ 67} In State v. Ulis (1993), 91 Ohio App.3d 656, andState v. Miller (1988), 43 Ohio App.3d 44, those courts of appeals noted that, where the testimony given falls squarely within the Evid.R. 803(4) exception to the hearsay rule, it is not a condition precedent that a child be determined competent to testify pursuant to Evid.R. 601(A):
"* * * [I]t is not a condition precedent to admissibility of statements made to a physician for diagnosis and treatment under Evid.R. 803(4) that a child be determined competent to testify pursuant to Evid.R. 601(A). * * *"
Miller, at 46, quoting Ferrell v. Ferrell (Mar. 14, 1986), Huron App. No. H-84-39, at 7. Both courts found that the child's statements could be admitted pursuant to Evid.R. 803(4) regardless of any ruling on the child's competency.
 {¶ 68} Defendant contends that the more recent Supreme Court of Ohio case of State v. Said (1994), 71 Ohio St.3d 473, requires that the child's competency be determined before the statements are admitted. However, the Supreme Court's decision inSaid only dealt with the admission of statements made under Evid.R. 807 and did not address the situations previously determined regarding whether or not the competency of a child needs to be determined prior to the admission of statements under Evid.R. 803(4). Because the Said court did not address the admissibility of statements under Evid.R. 803(4), this court specifically finds that that court's holding on that issue does not apply to the present case.
 {¶ 69} Based on the foregoing, defendant's third assignment of error is not well-taken and is overruled.
 {¶ 70} In his second assignment of error, defendant contends that his right to confrontation as guaranteed by theSixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution was violated when the trial court admitted P.S.'s out-of-court statements into evidence.
 {¶ 71} The Fourteenth Amendment Due Process Clause guarantees that those accused in criminal prosecutions have the right to confront adverse witnesses against them. In Crawford, supra, the United States Supreme Court held that admitting testimonial hearsay at trial, absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant, violates the accused's confrontation right under theSixth Amendment to the United States Constitution. Id. at 52. Therefore, at least with respect to testimonial statements, the court overruled the holding from Ohio v. Roberts (1980),448 U.S. 56, 100 S.Ct. 2531, that hearsay statements could be admitted despite the absence of a prior opportunity for cross-examination if the statements fell within a firmly rooted hearsay exception or the statements bore particularized guarantees of trustworthiness.
 {¶ 72} Although the threshold determination becomes whether the hearsay statements in question are "testimonial," the Supreme Court in Crawford explicitly declined to provide a comprehensive definition of "testimonial." The Supreme Court did, however, provide that, at a minimum, "testimonial" covers the following:
* * * "[E]x parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarant would reasonably expect to be used prosecutorially" * * * "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" * * * "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."
* * *
Statements taken by police officers in the course of interrogations * * * [.]
Id. at 28-29 (citations omitted).
 {¶ 73} However, where nontestimonial hearsay is involved, the Supreme Court in Crawford stated as follows:
Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as doesRoberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment
demands what the common law required: unavailability and a prior opportunity for cross-examination. * * *
Id. at 52-53 (emphasis sic).
 {¶ 74} We begin our analysis by determining whether P.S.'s statements to the social worker are testimonial in nature and specifically whether the statements fit into any of the clearly prescribed areas of testimonial evidence as delineated by the court in Crawford. Clearly, P.S. did not make her statement in the course of a preliminary hearing, in front of a grand jury, or at a prior trial; therefore, these formulations of testimonial evidence are not at issue. However, defendant contends that P.S.'s statements were made in the course of a police interrogation, one of the clearly defined areas of testimonial evidence in Crawford, and, therefore, her statements are testimonial in nature. Defendant relies on the fact that the police were permitted to view P.S. through close circuit television while she made her statement to the social worker.
 {¶ 75} Ordinarily, where a law enforcement official is involved during a course of questioning, such questioning would be considered a "police interrogation." Because the questioning in this case was done by a hospital social worker who testified as part of a sexual assault examination, we must determine whether this questioning constituted police interrogation. Unfortunately, the Crawford decision is not helpful in our determination of this issue, as the court explained that it used the term "interrogation" in a colloquial sense and noted that "one can imagine various definitions of `interrogation.'" Id. at fn. 4.
 {¶ 76} The court's dicta suggests, however, that police "interrogation" may extend beyond the type of structured police questioning which was at issue in Crawford, particularly in light of the fact that the declarant's statement was knowingly given in response to structured police questioning and the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." Id. at fn. 7.
 {¶ 77} In light of the concerns stated in Crawford, we examine whether and to what extent government officials were involved in producing the statement and whether their purpose was to develop testimony for trial.
 {¶ 78} P.S.'s statements were made to a social worker who works for the Child Advocacy Center, which is a part of Children's Hospital in Columbus, Ohio. The Child Advocacy Center is neither run by nor managed by any government officials. In fact, the testimony revealed that its employees are employees of Children's Hospital. Further, the testimony in this case reveals that the function of the social worker was solely for medical diagnosis and treatment. The documents prepared relative to P.S.'s examination and interview were all completed on forms provided by Children's Hospital. Those forms included a narration of the interview with P.S., a family tree chart, a general development form, and the medical form specifically pertinent to the examination, as well as anatomical drawings of an adult male and a juvenile female, where P.S. was asked to indicate the areas where sexual contact took place. While P.S. was referred by the police, there was no evidence that the police arranged the interview.
 {¶ 79} Defendant cites State v. Snowden (2005), 385 Md. 64,867 A.2d 314, and State v. Mack (2004), 337 Or. 586,101 P.3d 349, in support of his argument that the interview by the social worker was nothing more than a subterfuge for a police interrogation. However, this court finds that those cases differ from the factual situation presented herein.
 {¶ 80} In Snowden, the police asked the social worker who specialized in sexual abuse, to interview three child victims. The social worker began the interview with the police report in hand, a detective was present during the interview, and the children were aware of the detective's presence. The trial court specifically found that the children were interviewed for the express purpose of developing testimony, and the Maryland Supreme Court held that these circumstances rendered the interview functionally equivalent to a formal police questioning.
 {¶ 81} In Mack, the social worker acted at the direction of the police when she interviewed a three-year-old witness. The police videotaped the interview. At trial, the social worker explained that she primarily intended the interview to aid law enforcement officials in completing their investigation. The trial court found that the social worker acted as an agent of the police and that the social worker interviewed the child in a manner structured to obtain information for the state's use in prosecuting the defendant. The Oregon Supreme Court recognized this as the functional equivalent of police interrogation and, thus, found that the statements were testimonial.
 {¶ 82} Although each factual situation must be judged on its own merits, the facts of this case lead this court to conclude that the statements P.S. made to the social worker are non-testimonial. (1) The social worker was not a governmental officer or employee. She was an employee of the Child Advocacy Center, which is part of Children's Hospital. The fact that the social worker was, in essence, a member of a team does not, in and of itself, make the social worker a government official absent a more direct and controlling police presence. (2) The social worker testified that her function in interviewing P.S. was solely for medical treatment and diagnosis and not to develop testimony for trial. (3) The forms used were prepared by the hospital and the social worker did not act at the direction of the police. (4) Although the police were permitted to watch the interview, they did not control the process. (5) The police were not overtly present and the child was not made aware of their presence. These procedures do not constitute the functional equivalent of a police interrogation.
 {¶ 83} Defendant also argues that, even if this court finds that P.S.'s statements were not testimonial, his right to confront witnesses against him under the Ohio Constitution was still violated. However, because review of the record indicates that defendant did not object to the admission of those statements specifically relative to the Ohio Constitution, this court only reviews that argument under the plain error doctrine. Defendant cites State v. Storch (1993), 66 Ohio St.3d 280, and argues that the trial court violated the Ohio Confrontation Clause by failing to bring P.S. into court to determine whether she was capable of testifying. However, upon review of theStorch case, this court finds that it does not apply. InStorch, the Supreme Court of Ohio was considering the admission of statements under Evid.R. 807. In contrast, in the present case, P.S.'s statements were properly admitted under Evid.R. 803(4). Evid.R. 807 specifically contemplates that a pretrial hearing will be conducted, at which time the ability of the child to testify should be addressed, and an initial determination as to the admissibility of the child's statements should be made.
 {¶ 84} At least two courts in Ohio have refused to extend the holding from Storch beyond the Evid.R. 807 context. In Statev. Johnson (Dec. 26, 1995), Ross App. No. 94 CA 2004, the Fourth District Court of Appeals determined that the statements inStorch regarding the Ohio Confrontation Clause were dicta and specifically refused to impose an unavailability requirement on other firmly rooted hearsay exceptions. Further, in State v.Wright (Oct. 2, 1997), Cuyahoga App. No. 71008, the Eighth District Court of Appeals held that the trial court was not required to inquire into the availability of the child-declarant to testify because the child's testimony was being admitted under the excited utterance exception under Evid.R. 803(2).
 {¶ 85} In order to find in defendant's favor, this court would have to find that there was obvious error on the part of the trial court to fail to determine whether or not P.S. was able to testify. As this court has already stated in this opinion, with or without P.S.'s statements, defendant's confession to the police was admissible as evidence and, with the exception of the conviction for force, defendant's convictions were supported by the evidence. As such, this court finds that any error on the part of the trial court in this matter relative to the application of the Ohio Constitution with regard to determining P.S.'s ability to testify is harmless.
 {¶ 86} Based on the foregoing, defendant's second assignment of error is not well-taken and is overruled.
 {¶ 87} For the foregoing reasons, defendant's first, second, third, and fourth assignments of error are overruled. Defendant's fifth assignment of error is overruled in part and sustained in part. Specifically finding that there was not sufficient evidence of force in the present case, this matter is remanded to the Franklin County Court of Common Pleas for resentencing solely on the convictions for rape, without force, and gross sexual imposition.
Judgment affirmed and case remanded for resentencing.
French and Travis, JJ., concur.
[1] To protect the anonymity of the victim, we shall use the victim's initials throughout this opinion.