OPINION
{¶ 1} Defendant-appellant, Michael S. Arnold, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} In 2005, appellant and Wendy Otto were married and living together with their two children — a four-year old girl and a five-year old boy. On the evening of *Page 2 
December 7, 2005, all four fell asleep in their living room. Otto awoke to find that appellant and her daughter were no longer in the room. She heard noises upstairs and went to her bedroom to investigate. The bedroom door was locked, so she yelled for appellant to open the door. When he did, Otto saw that appellant's boxers were not on properly. She also saw her daughter lying on the couple's air mattress. Otto did not initially think anything was wrong, but when she pulled a blanket off of her daughter, she discovered that her daughter's underwear was down around her feet. At that point, Otto was concerned about what had happened and told appellant to leave. Appellant told Otto that he was not doing anything and that nothing happened. Otto called 911 and appellant left the house.
 {¶ 3} Members of the Columbus Police and Fire Departments arrived at the house within minutes. Charles Fritz, a Columbus firefighter, observed the four-year old girl and thought she acted withdrawn and anxious. Fritz asked her what had happened, and she told him that someone had touched her in her private parts. Fritz took Otto and both children to Children's Hospital, where a rape kit was collected from Otto's daughter.
 {¶ 4} The next day, Otto took her daughter to the Child and Family Advocacy Center at Children's Hospital. A licensed social worker, Kerri Marshall, interviewed the child about the previous night's events. Although the child was alone in the room with the interviewer, other people watched the interview from another room via closed-circuit television: a detective, a nurse practitioner, a victim's advocate, and a case worker from Franklin County Children Services. The interview was recorded. During the interview, the child accused appellant of conduct that would constitute sexual abuse. After the interview, the nurse practitioner, Gail Hornor, performed a physical examination of the *Page 3 
child. She observed recent abrasions on the child's hymen, the tissue inside the labia that surrounds the vagina.
 {¶ 5} A Franklin County grand jury subsequently indicted appellant for two counts of rape in violation of R.C. 2907.02. Both counts alleged that the victim was less than 13 years of age. One count alleged that appellant engaged in vaginal intercourse with the victim while the other count alleged that he engaged in cunnilingus. Appellant entered a not guilty plea and proceeded to a jury trial.
 {¶ 6} At appellant's trial, the trial court ruled that the victim was unavailable to testify. The trial court allowed the State to present, in lieu of the victim's live testimony, her recorded interview from the Child and Family Advocacy Center. Nurse Hornor testified that she examined the victim after the interview. She stated that the abrasions on the victim's hymen were recent and indicated that an object penetrated the labia in an attempt to penetrate the vagina one to three days before the examination. The jury found appellant guilty of rape by vaginal intercourse but not guilty of the other rape count. The jury also found that the victim was less than 10 years of age. The trial court, after designating appellant a sexual predator, sentenced him to life in prison. R.C. 2971.03(A)(2).
 {¶ 7} Appellant appeals and assigns the following errors:
 First Assignment of Error:
 The trial court violated Defendant's right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution, by admitting into evidence the out of court declarations by the alleged victim. *Page 4 
 Second Assignment of Error:
 The trial court erred in admitting the out of court declarations of the alleged victim contrary to the Rules of Evidence because the statements were not admissible under Evidence Rule 803(4). Third Assignment of Error:
 Appellant's conviction is not supported by sufficient evidence.
 Fourth Assignment of Error:
 Appellant's conviction is against the manifest weight of the evidence.
 {¶ 8} Appellant contends in his first assignment of error that the admission of the victim's out-of-court videotaped interview violated his constitutional right to confront witnesses. We disagree.
 {¶ 9} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment of the United States Constitution. Pointer v. Texas (1965), 380 U.S. 400,403-406, 85 S.Ct. 1065. We review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo.State v. Babb, Cuyahoga App. No. 86294, 2006-Ohio-2209, at ¶ 17, citingUnited States v. Robinson (C.A.6, 2004), 389 F.3d 582, 592; State v.Pasqualone, Ashtabula App. No. 2007-A-0005, 2007-Ohio-6725, at ¶ 42.
 {¶ 10} The State argues that we should apply a plain error standard to this assignment of error because appellant did not object to the admission of the victim's videotaped interview. We disagree. Before Marshall was allowed to testify about the child's statements, appellant's counsel objected on the record and asked to proffer his *Page 5 
objection. Marshall was then questioned outside the presence of the jury to allow the trial court to determine the admissibility of her testimony. After the trial court ruled to admit her testimony, it noted appellant's objection and stated that the objection would be preserved for purposes of appeal. Therefore, a plain error review is not appropriate.
 {¶ 11} In Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. Id. at 68-69. Therefore, the threshold issue we must determine in this case is whether or not the victim's videotaped statements are testimonial. State v. Martin, Franklin App. No. 05AP-818, 2006-Ohio-2749, at ¶ 19, citing State v.Crager, Marion App. No. 9-04-54, 2005-Ohio-6868, at ¶ 28.
 {¶ 12} The Crawford Court did not have to define what the term "testimonial" meant because the statements in that case were taken by police officers in the course of a police interrogation, which the court noted would be testimonial under any definition of the word.Crawford, at 52-53, 68 ("Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.").
 {¶ 13} Two years later, in Davis v. Washington (2006), 547 U.S. 813,126 S.Ct. 2266, the Court crafted the "primary purpose" test to more precisely determine whether statements made in response to police interrogations were testimonial or nontestimonial:
 Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are *Page 6 
testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Id. at 822. In Davis, the "interrogation" was performed by a 911 telephone operator. The Davis Court noted that such an individual "may at least be an agent of law enforcement" when questioning 911 callers. Therefore, the Davis Court considered the operator's questioning to be acts of the police. Id. at fn. 2. The Davis Court held that the circumstances surrounding the questioning by the 911 telephone operator indicated that the primary purpose of the questioning was to enable police to meet an ongoing emergency and, therefore, the responses were nontestimonial. Id. at 828.
 {¶ 14} Shortly after the Supreme Court of the United States decidedDavis, the Supreme Court of Ohio decided State v. Stahl,111 Ohio St.3d 186, 2006-Ohio-5482. In that case, the court was faced with a confrontation clause challenge to the admission of statements made by an adult crime victim to a nurse at a hospital's specialized unit for victims of sexual assault. The unit provided the same services as a traditional emergency room but in a more efficient and timely manner. Id. at ¶ 2. Before the nurse's physical examination of the victim, the nurse took a detailed history from the victim. In giving that history, the victim provided details of her assault. The victim passed away before the defendant's trial. The trial court allowed the nurse to testify that during the examination, the victim identified the defendant as the person who assaulted her.
 {¶ 15} The Supreme Court of Ohio declined to apply the primary purpose test articulated in Davis in determining whether or not the statements were testimonial. It did so because of the difference in the nature of the questioning that led to the statements in each of the two cases. The court distinguished the statements in Davis, which were *Page 7 
made in response to questioning by agents of law enforcement officers, from the statements in Stahl, which were made in response to questioning by a medical professional at a medical facility. The court concluded that the primary purpose of the questioning in Stahl was to determine proper medical treatment for the victim — not to conduct a criminal investigation. Id. at ¶ 25.
 {¶ 16} In light of this factual distinction, the Stahl court applied the "objective witness" test articulated in Crawford. Stahl at ¶ 36;Crawford, at 52. Under that test, a testimonial statement includes one "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Stahl at ¶ 36. In making this determination, a court should focus on the declarant's expectation at the time of making the statement; the intent of the questioner would only be relevant if it could affect the declarant's expectations. Id. The Stahl court determined that the victim's statements were nontestimonial because no reasonable person in the victim's position would believe that her statements were made for prosecutorial purposes.
 {¶ 17} The Supreme Court of Ohio revisited the confrontation clause inState v. Siler, 116 Ohio St.3d 39, 2007-Ohio-5637. In that case, the court considered whether or not statements made by a child to a deputy sheriff were testimonial. There was no doubt that the statements inSiler were made in response to a police interrogation. Therefore, theSiler court applied the primary purpose test articulated inDavis and determined that the statements were testimonial because there was not an ongoing emergency at the time of the questioning and the primary purpose of the questioning was to investigate a possible crime. Id. at ¶ 43-46. The Siler court noted in its decision that the primary *Page 8 
purpose test should be applied to statements made by a child in response to interrogations by police "or those determined to be police agents." Id. at ¶ 29.
 {¶ 18} As this review of confrontation clause cases indicates, the Supreme Court of Ohio applies different tests to determine whether or not statements are testimonial based on the identity of the questioner and the purpose of the questioning. Siler, at ¶ 28 ("Stahl is factually distinguishable from the instant case based on the identity of the interrogator and the purpose of the questioning."). If the questioner is a law enforcement officer or an agent thereof, the court applies the primary purpose test to determine whether the statements are testimonial. Siler. If the questioner is not a law enforcement officer or agent thereof, the court applies the objective witness test.Stahl.
 {¶ 19} Thus, in the case at bar, we must first examine the identity of the questioner in order to determine whether or not the victim's statements were testimonial. Appellant contends that the Child and Family Advocacy Center serves a law enforcement function and that, necessarily, its employees should be considered as police agents. We disagree.
 {¶ 20} Child advocacy centers, such as the Child and Family Advocacy Center at Children's Hospital, were established in 2005 by the adoption of R.C. 2151.425 through 2151.428. These statutes authorize collaboration between children services agencies, local law enforcement, prosecutors, and other appropriate entities through a memorandum of understanding. Local law enforcement and prosecutors are permitted to access information at the centers when investigating alleged abuse. This collaboration does not make the centers' employees agents of the police when providing services to alleged victims of sexual abuse. *Page 9 
 {¶ 21} Although this court has not specifically addressed whether interviewers at the Child and Family Advocacy Center are police agents, we have considered challenges to the admissibility of statements made during interviews at the center in a number of cases. In State v.Edinger, Franklin App. No. 05AP-31, 2006-Ohio-1527, we determined that questioning of a child by a social worker at the center did not amount to police interrogation and, therefore, the statements made in response to the questioning were nontestimonial. Id. at ¶ 82. In making that determination, we noted that: (1) the center is not run or managed by any government officials; (2) that its employees are employed by Children's Hospital and not the government; (3) the social worker testified that her function in interviewing the child was solely for medical treatment and diagnosis and not to develop testimony for trial; (4) the social worker did not act at the discretion of the police; (5) although the police were permitted to watch the interview, they did not control it; and, (6) the police were not overtly present and the child did not know of their presence. Id.
 {¶ 22} In Martin, supra, this court again found a child's statements made to a social worker at the center to be nontestimonial after considering the factors set forth in Edinger. Id. at ¶ 21. See, also,State v. Jordan, Franklin App. No. 06AP-96, 2006-Ohio-6224, at ¶ 26 (statements made to social worker at the center were nontestimonial, where social worker not employee of the state and purpose of interview was to gather information for treatment and not to investigate alleged sexual abuse).
 {¶ 23} Although not faced with a confrontation clause challenge, this court in In re M.E.G., Franklin App. No. 06AP-1256, 2007-Ohio-4308, analyzed whether or not a social worker interview at the center was a subterfuge to gather information for law enforcement. *Page 10 
We rejected that contention. As in Edinger, we noted that the social worker testified that her interview was done only for medical diagnosis and treatment of the sexual abuse victim. After the interview, the social worker communicated the information she obtained to the doctor who then performed a physical examination of the child. There was no indication that law enforcement officers initiated the interview or that the child was aware that law enforcement officers were watching the interview. Id. at ¶ 28-29. We also noted that even though the center's policy provided for the preservation of potential evidence, such a policy was secondary to the medical examination and did not automatically convert the questioner's purpose from gathering medical evidence to one of gathering information for law enforcement. Id.
 {¶ 24} Finally, this court considered another confrontation clause challenge to statements made during an interview at the center inState v. D.H., Franklin App. No. 07AP-73, 2007-Ohio-5970. InD.H., there were a number of people, including law enforcement officers, watching the interview in real time through a closed-circuit television. The victim was unaware that law enforcement officers were monitoring the interview. The interviewer shared the information from the interview with a medical examiner who then performed a physical examination of the victim, based in part on the information learned in the interview.
 {¶ 25} We concluded in D.H. that the statements made in the interview were nontestimonial. Id. at ¶ 53. In so doing, we applied the objective witness test articulated in Stahl and determined that one could "reasonably conclude that the interview * * * was for medical diagnosis and treatment, and not for the availability of a criminal trial." Id. We again noted that simply because information gathered in the interview was subsequently *Page 11 
used by the State does not alter the result. Id.; see, also, State v.Muttart, 116 Ohio St.3d 5, 2007-Ohio-5267, at ¶ 62 (noting, in finding that child statements were nontestimonial, that the "fact that the information gathered by the medical personnel in this case was subsequently used by the state does not change the fact that the statements were not made for the state's use.").
 {¶ 26} In the present case, Otto brought her daughter to the center; law enforcement did not initiate the interview. Kerri Marshall, a licensed social worker employed by Children's Hospital, interviewed the child alone in a room. Although other people watched the interview from another room via closed-circuit television, these people did not enter the interview room and the child was unaware of their presence. There is no indication that any law enforcement officers were involved in the interview. Marshall testified that the purpose of the interview was for medical diagnosis and treatment. She told the child at the beginning of the interview that the child would be examined by a nurse after the interview.
 {¶ 27} Following the interview, Marshall shared the information she learned with Nurse Horner, who then performed a complete physical examination of the child. Horner testified that the details Marshall provided guided her exam of the victim and was important to insure an accurate diagnosis. For example, if Marshall told Horner that the victim stated that her vagina was touched by a penis, Horner would make sure that the victim was tested for sexually transmitted diseases.
 {¶ 28} In light of these circumstances, we conclude that Marshall did not act as an "agent of the police" when she questioned the victim. She was not an employee of the State but, rather, was employed by the hospital. She testified that her purpose in *Page 12 
interviewing the child was for medical diagnosis and/or treatment. She passed along the information she obtained to a nurse who used that information to guide the physical examination of the victim. Other than passive observation, there was no police involvement during the interview and the victim did not have any indication of a police presence. The fact that the interview was recorded and subsequently provided to the State for use in the prosecution of a sexual offense does not make Marshall an agent of the police or a law enforcement officer. In re M.E.G., at ¶ 29; cf. Muttart, at ¶ 62.
 {¶ 29} Because Marshall was not acting as a police agent during her questioning of the child, we must apply the objective witness test to determine whether or not the child's statements were testimonial.Stahl, at ¶ 36. Under that test, a testimonial statement includes one "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. In making this determination, a court should focus on the declarant's expectation at the time of making the statement; the intent of the questioner is only relevant if it could affect the declarant's expectations. Id.
 {¶ 30} Here, there is no evidence that the child realized that her statements would be available for use at a later trial. The child was only four-years old at the time of the interview. It is highly unlikely that she realized her statements would be available for later use.Martin, at ¶ 21 (noting that it would be "highly unlikely" that a six-year old would realize that her statements were to be available for use at a later trial). The interview occurred at Children's Hospital and not a jail or police headquarters. There were no police officers or other law enforcement officials in the interview room. Marshall testified that she attempted to ask open-ended questions and avoided leading questions. *Page 13 
Marshall also told the child at the beginning of the interview that she would be examined by a nurse after the interview. In light of these facts, we conclude that an objective witness would not reasonably believe that the statements made in the interview would be available for use at a later trial. Accordingly, the victim's statements during the interview were nontestimonial.
 {¶ 31} Courts in other states have found similar statements to be nontestimonial. State v. Arroyo (Conn. 2007), 935 A.2d 975, 998 (child's statements made to social worker at abuse clinic nontestimonial, where no evidence of law enforcement involvement with questioning and purpose of interview was for the child's welfare); Seely v. State (Ark. 2008), ___ S.W.3d ___ (statements made to social worker at children's hospital nontestimonial where social worker not agent of government, primary purpose of interview was to define scope of medical exam, and there was no police participation in interview); State v. Krasky (Minn. 2007),736 N.W.2d 636, 641 (statements made to nurse who did not act as government actor); People v. Vigil (Colo. 2006), 127 P.3d 916, 922-925 (statements made to doctor who was part of a child protection team were nontestimonial, where purpose of questioning was for medical assistance); cf. Commonwealth v. DeOliveira (Mass. 2006), 849 N.E.2d 218,225 (noting that police presence at hospital does not turn physician into agent of law enforcement).
 {¶ 32} We recognize that courts in some states have found statements in similar situations to be testimonial because the interviewer acted as a police agent or proxy. However, the excessive amount of police involvement in those cases distinguishes them from the case at bar, where there was only passive police involvement in the interview. See, e.g., In re S.R. (Pa. 2007), 920 A.2d 1262, 1267 (police called in questioner, viewed *Page 14 
proceedings through one-way glass, conferred with questioner and had questioner prepare questions as if on direct examination); State v.Henderson (Ks. 2007), 160 P.3d 776, 789-790 (detective actively involved in investigation and sat in on interview, even asking questions);State v. Snowden (Md. 2005), 867 A.2d 314, 325-327 (detective initiated questioning and was present during questioning); State v. Contreras
(Fla. 2008), 979 So.2d 869 (although law enforcement officer not in room, he was connected electronically to interviewer in order to suggest questions); State v. Bentley (Iowa2007), 739 N.W.2d 296, 299-300 (police arranged interview, child told of police presence, and midway through interview, interviewer discussed interview with police to see if she missed anything).
 {¶ 33} In other cases, courts have also found statements to be testimonial where the purpose of the interview was to gather evidence or to preserve or develop testimony for trial. Snowden, at 326 (purpose of interview to develop testimony in contemplation of later trial);State v. Mack (Or. 2004), 101 P.3d 349 (interviewer who began questioning victim when police could not did so for police to videotape statements for use at trial); State v. Hooper (Idaho2007), 176 P.3d 911, 917-918
(noting that primary purpose of interview, done separately and after medical assessment, was to prove past events); Bentley (child implored to talk because "it's just really important the police know about everything that happened"); State v. Justus (Mo. 2006), 205 S.W.3d 872,880 (interview performed to preserve testimony for trial; interviewer knew that her interview was "an official interview done for law enforcement"); State v. Blue (N.D. 2006), 717 N.W.2d 558, 564-565
(primary purpose of interview was to prepare for trial; "forensic interview" occurred after physical examination of victim). These cases are also not persuasive here, *Page 15 
because Marshall testified that the purpose of the interview was for medical diagnosis or treatment, she told the child that she would be seen by a nurse after the interview, and she related what she learned in the interview to the examining nurse.
 {¶ 34} Inherent in the duties of medical personnel seeking to help a child abuse victim is to attempt to determine what happened to the child. Such an inquiry does not mean that the medical personnel are acting as law enforcement officers whose primary purpose is to gather evidence. Here, Marshall acted without police involvement during the interview and questioned the child so that the child could be properly treated. Marshall provided the information she obtained from the child to the examining nurse, who then examined the child based on that information. The primary purpose of Marshall's interview was to gather information for the child's proper treatment and diagnosis and not to produce evidence for a future prosecution, even though such evidence may have been produced as a result of the interview. For these reasons, we find that the child's statements are not testimonial for purposes of the Confrontation Clause. Accordingly, the admission of those statements did not violate appellant's Sixth Amendment right to confrontation. Appellant's first assignment of error is overruled.
 {¶ 35} Appellant contends in his second assignment of error that the child's interview was improperly admitted pursuant to Evid.R. 803(4) because the statements were not made for purposes of medical diagnosis or treatment. We disagree.
 {¶ 36} Initially, we note that a trial court has broad discretion to determine whether a declaration should be admissible under a hearsay exception. State v. Dever (1992), 64 Ohio St.3d 401, 410. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v. Finnerty (1989), 45 Ohio St.3d 104, 107. *Page 16 
 {¶ 37} This court has repeatedly determined that statements made to a social worker at the Child and Family Advocacy Center may be admissible under Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment. State v. Vance, Franklin App. No. 06AP-1016,2007-Ohio-4407, at ¶ 70; Martin, at ¶ 15-17; M.E.G., at ¶ 26; In reD.H., at ¶ 37-48; Edinger, at ¶ 62.[1] The Supreme Court of Ohio also has recently held that a child's statements may be admitted pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment, regardless of the child's competency to testify.Muttart, supra, at syllabus.
 {¶ 38} The Supreme Court of Ohio in Muttart identified a number of factors that a court should consider when determining whether a child's statements were for medical diagnosis or treatment. Id. at ¶ 49. Applying those considerations, we note that Marshall testified that the purpose of the interview was for medical diagnosis or treatment and that she tried to avoid leading or suggestive questions in the interview. There was no indication of a motive to fabricate, such as a custody dispute, and the child was only four-years old. We also note that Marshall told the child at the beginning of the interview that she would be examined by a nurse after the interview. Marshall repeated all of the information she obtained in the interview to Hornor, the nurse who then examined the child. Hornor testified that she used that information to guide her physical examination of the child. The child's statements were made for purposes of medical diagnosis or treatment. The fact that other people, including law enforcement officers, watched the interview did not change that purpose. Martin, at ¶ 17. *Page 17 
 {¶ 39} Because the child's statements were made for the purpose of medical diagnosis or treatment, Evid.R. 803(4) did not prohibit the admission of the child's statements. See, also, State v. Walker, Hamilton App. No. C-060910, 2007-Ohio-6337, at ¶ 38. The trial court did not abuse its discretion by admitting those statements. Appellant's second assignment of error is overruled.
 {¶ 40} Appellant's third and fourth assignments of error contend that his rape conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each.
 {¶ 41} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus.
 {¶ 42} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in *Page 18 
the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 43} In order to convict appellant of rape, the State had to prove beyond a reasonable doubt that he engaged in sexual conduct with the victim when she was less than 13 years of age. R.C. 2907.02(A)(1)(b). Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). It is not disputed that the victim was less than 13 years of age at the time of the offense.
 {¶ 44} In the child's interview that was played to the jury, she stated that appellant did "pee-pees" with her.[2] She said that this was the reason appellant was now in jail. She said that appellant took his boxers off and touched his pee-pee with her pee-pee and that she did not like the way it felt. She also stated that appellant's pee-pee went inside *Page 19 
her pee-pee. This evidence alone would be sufficient to prove that appellant engaged in sexual conduct with the child.
 {¶ 45} Aside from the child's statements, however, there was additional evidence of appellant's conduct. Otto testified that the door of her bedroom was locked with appellant and her daughter inside the room. When he unlocked the door, Otto saw appellant's boxers were not on correctly. She then pulled a blanket off her daughter and saw that her daughter's underwear was down around her ankles. Hornor, the nurse who examined the child, observed recent abrasions on the child's hymen, which indicated to her that something penetrated the child's labia.
 {¶ 46} The State presented sufficient evidence for a rational trier of fact to have found the essential elements of rape by vaginal penetration proven beyond a reasonable doubt. See State v. Roberts, Hamilton App. No. C-040547, 2005-Ohio-6391, at ¶ 62 (evidence of penetration of labia sufficient to show vaginal penetration); State v. Schuster, Lucas App. No. L-05-1365, 2007-Ohio-3463, at ¶ 67 (same); State v. Gilbert, Franklin App. No. 04AP-933, 2005-Ohio-5536, at ¶ 28-35 (same). Accordingly, appellant's third assignment of error is overruled.
 {¶ 47} Appellant's manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly *Page 20 
lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction."' Id.
 {¶ 48} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 49} Appellant claims that his conviction is against the manifest weight of the evidence because the child's statements were confused, meandering, and the product of leading questions. We disagree. While the child's statements, at times, are not clear, one cannot expect absolute clarity from a four-year old. The child simply described what happened in her own words. The questioning, while at times pointed, consisted mainly of *Page 21 
open-ended questions in an attempt to encourage the child to talk and was not unduly suggestive.
 {¶ 50} Additionally, other evidence supports the child's accusation. Otto described finding her daughter alone in a bedroom with appellant with her underwear down to her ankles. A fireman who responded to the scene testified that the child told him that someone had touched her in her private parts. Finally, Nurse Hornor performed a physical examination of the child and observed fresh abrasions on her hymen. These abrasions indicated to her that something recently penetrated the child's labia.
 {¶ 51} In light of this evidence, we cannot say that the jury clearly lost its way. Appellant's conviction for rape is not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
 {¶ 52} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and SADLER, JJ., concur.
[1] Appellant's reliance on State v. Butcher, 170 Ohio App.3d 52,2007-Ohio-118, in support of this assignment of error is misplaced. This court has specifically rejected the holding in that case. In reD.H., at ¶ 40-41.
[2] "Pee-pees" was the child's term for a person's private parts. *Page 1