DECISION AND JUDGMENT
{¶ 1} This matter is before the court on the judgment of the Lucas County Court of Common Pleas, wherein, following a jury trial, appellant, Basil Morales, was found guilty on one count of felonious assault, with a firearm specification. For the reasons that follow, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} On March 14, 2007, a grand jury returned a two-count indictment against appellant. The first count charged appellant with felonious assault and contained a firearm specification. The second count charged appellant with having weapons while under a disability. On March 22, 2007, appellant, with counsel, entered pleas of not guilty as to each of the counts against him.
 {¶ 3} A trial date was scheduled for May 22, 2007. When Shontae Hill, the alleged victim in this case, failed to appear for trial (despite having been properly subpoenaed) a body attachment was ordered for her arrest.
 {¶ 4} On May 30, 2007, the matter proceeded to trial on the charge of felonious assault and on the firearm specification.[1] Hill, who could not be located by police, did not appear to testify at the trial. Despite her absence, the state was able to present evidence in support of the charges as follows. Toledo Police Officer Valerie Lynn Lewis testified that at approximately 5:33 p.m., on February 2, 2007, she was dispatched to 1805 1/2 Freeman, Toledo, Ohio, to respond to a call that someone had been shot. When she arrived at the scene, approximately three minutes later, she observed two females, both of whom appeared to be in their twenties. One female was "balled up on the ground," crying, and in need of medical attention because she had been shot. The other female was comforting her. The female who had been shot was identified to Officer Lewis as Shontae Hill. Emergency medical personnel arrived on the scene to attend to Hill's injuries. A suspect was identified, but was not at the scene. *Page 3 
 {¶ 5} Over appellant's objection, a tape of the February 2, 2007 911 call reporting the incident was played to the jury. In the tape, an unidentified female states, "Oh my God, somebody got shot!" The 911 operator asks for the address and the caller indicates "1805 Freeman." In response to the operator's question as to who did it, the caller states, "Basil. * * * I don't know his last name." The caller indicates that Basil left on foot going down Freeman, dressed in a black leather coat and a hat, and she describes him as about 6'1" in height. The caller is then referred to a medical technician and the tape ends.
 {¶ 6} Also introduced (and, ultimately, submitted to the jury) over appellant's objection, were the medical treatment records from Hill's stay at Toledo Hospital from February 2 to 4, 2007. The emergency center report indicates that Hill "had an altercation with her boyfriend and he shot her in the leg." The records alternately describe the "boyfriend" as her "fiancé." On the social work services Adult Psychosocial/Continuing Care Assessment form, there is a notation indicating that Hill met with the social worker and discussed her relationship with her fiancé, "who was the shooter." The report further states that Hill was "tearful" and "does not know how this happened." On the Inpatient Nursing-Personal History and Information form, by the question, "Are you currently in a relationship where you or your child are physically hurt, threatened or made to feel afraid," the box marked "yes" is checked. Next to that answer is a handwritten notation "GSW fiancé er [sic] fiancé's girlfriend."
 {¶ 7} Testimony by Hill's mother, Valerie Ector, established that at the time of the shooting, Hill was romantically involved with appellant. According to Toledo Police *Page 4 
Officer Raynard Cooper, appellant was charged on the day of the shooting, but he was not arrested until just over a month after the shooting.
 {¶ 8} At the end of appellant's trial, the jury returned a unanimous verdict of guilty. The trial court sentenced appellant to serve seven years in prison for the felonious assault, with three additional years for the firearm specification, for a total period of incarceration of ten years.
 {¶ 9} Appellant timely filed an appeal of his conviction, raising the following assignments of error:
 {¶ 10} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. MORALES BY ADMITTING OUT OF COURT STATEMENTS IN VIOLATION OF HIS RIGHT TO CONFRONT WITNESSES AS GUARANTEED UNDER THE SIXTH AMENDMENT AND HIS RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 11} II. "PROSECUTORIAL MISCONDUCT DURING THE TRIAL DEPRIVED MR. MORALES OF A FAIR AND RELIABLE TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 12} III. "THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. MORALES BY DENYING HIS MOTION FOR A MISTRIAL IN VIOLATION OF HIS RIGHTS UNDER THEFIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO *Page 5 
THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE OHIO CONSTITUTION."
 {¶ 13} IV. "CUMULATIVE ERRORS DEPRIVE A CRIMINAL DEFENDANT AND CRIMINAL APPELLANT OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THEFIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE OHIO CONSTITUTION."
 {¶ 14} Appellant contends in his first assignment of error that the trial court erred when it admitted into evidence: (1) the tape of the 911 call reporting the shooting; and (2) the victim's medical treatment records. According to appellant, the statements contained in each were "testimonial" and in violation of Crawford v. Washington (2004),541 U.S. 36.
 {¶ 15} The Sixth Amendment to the United States Constitution relevantly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." This procedural guarantee applies to both federal and state prosecutions. Pointer v. Texas (1965), 380 U.S. 400, 406.
 {¶ 16} In Crawford v. Washington, supra, the United States Supreme Court held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Id., at 68. This is true, regardless of whether such statements *Page 6 
are deemed reliable by a court. Id., at 61-62. Thus, the threshold issue for our determination is whether or not the challenged statements are testimonial.
 {¶ 17} The Supreme Court of Ohio applies different tests to determine whether statements are testimonial, based on the identity of the questioner and the purpose of the questioning. See State v. Siler,116 Ohio St.3d 39, 2007-Ohio-5637, ¶ 28; see, also, State v. Arnold, 10th Dist. No. 07AP-789, 2008-Ohio-3471, ¶ 18. If the questioner is a law enforcement officer or an agent thereof, the court applies the "primary purpose" test to determine whether the statements are testimonial. SeeSiler at ¶ 28; Arnold at ¶ 18. But if the questioner is not a law enforcement officer or agent thereof, the court applies the "objective witness test." See State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482; see, also, Arnold at ¶ 18.
 {¶ 18} The primary purpose test, first articulated by the United States Supreme Court in Davis v. Washington (2006), 547 U.S. 813, provides as follows:
 {¶ 19} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." Id. at 822. *Page 7 
 {¶ 20} The "objective witness test," on the other hand, was first articulated by the United States Supreme Court in Crawford, supra, and relevantly provides that a testimonial statement includes one "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52; Stahl at ¶ 36. In making this determination, "courts should focus on the expectation of the declarant at the time of making the statement; the intent of the questioner is relevant only if it could affect a reasonable declarant's expectations." Stahl at ¶ 36.
 {¶ 21} In the case at bar, we must first examine the identity of the questioners in the 911 tape and in the medical records in order to determine whether the challenged statements were testimonial.
 {¶ 22} Regarding the identity of 911 operators, we note the following comments of the United States Supreme Court in Davis: "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers." Id. at 823, fn. 2. In the instant case, we find that the 911 operator's repeated questioning about the identity and whereabouts of the assailant indicates that she was "at least" an agent of law enforcement when she conducted the interrogation of the caller. Thus, the primary purpose test is properly applied to determine whether the statements relayed in the 911 tape were testimonial.
 {¶ 23} Here, the evidence reveals that the 911 call took place immediately after the shooting, as the shooter was walking away from the scene, not yet out of the sight of the *Page 8 
caller. The frantic words and tone of the caller certainly indicate that she was facing an ongoing emergency. The statements elicited from her, including the identity of the assailant, were, in this case, necessary to resolve the present emergency, rather than simply to learn what had happened in the past. See Davis at 827 (Operator's effort to establish the identity of the assailant found necessary to resolve present emergency inasmuch as it would help the dispatched officers know whether they would be encountering a violent felon.) As such, the caller's statements were clearly nontestimonial.
 {¶ 24} Our analysis with respect to statements contained in the medical records is somewhat different, because the questioners in that instance, i.e., doctors, nurses, and social workers, are clearly not law enforcement officers or agents thereof. Instead of the primary purpose test, we must use the objective witness test. Applying this test, we note that all of the victim's statements were made during her hospital stay, to medical professionals, in connection with her ongoing treatment and care. It is our conclusion that the circumstances under which her statements were made were not such that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. See Crawford, 541 U.S. at 52. Thus, the victim's statements, like the 911 caller's statements in this case, were nontestimonial.
 {¶ 25} Because none of the challenged statements is testimonial, there could be no Crawford violation. Accordingly, appellant's first assignment of error is found not well-taken. *Page 9 
 {¶ 26} Appellant argues in his second assignment of error that certain misconduct on the part of the prosecutor deprived appellant of a fair trial. And in his third assignment of error, he argues that the trial court erred to his prejudice by denying motions for a mistrial that were made on the basis of the same alleged misconduct. Because the two assignments of error involve overlapping issues, we will consider them together.
 {¶ 27} In reviewing a claim for prosecutorial misconduct, an appellate court must determine: (1) whether the prosecutor's actions were improper; and (2) if so, whether the prosecutor's remarks prejudicially affected the substantive rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14, citing United States v. Dorr (C.A.5.1981), 636 F.2d 117, 120. The analysis must focus on "the fairness of the trial, not the culpability of the prosecutor." State v. Davis,116 Ohio St.3d 404, 2008-Ohio-2, ¶ 231, citing Smith v. Phillips (1982), 455 U.S. 209,219. The prosecutor's conduct cannot serve as grounds for a new trial unless such conduct deprives the defendant of a fair trial. State v.Keenan (1993), 66 Ohio St.3d 402, 405.
 {¶ 28} "Even where a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted only if the statements permeate the entire atmosphere of the trial." State v.Walls (Dec. 11, 2000), 12th Dist. No. CA99-10-174. An appellate court must bear in mind when reviewing the record that both the defense and the prosecution are given wide latitude in their arguments as to what the evidence has shown and what reasonable inferences may be drawn therefrom. Id. *Page 10 
 {¶ 29} When evaluating the prosecutor's arguments for possible misconduct, the court must review the argument as a whole and in relation to that of opposing counsel. Id., citing State v. Moritz
(1980), 63 Ohio St.2d 150, 157-158. If the prosecutor does state an opinion, it must be based on the evidence presented, and not on personal beliefs. See State v. Watson (1991), 61 Ohio St.3d 1, 10.
 {¶ 30} The decision to grant or deny a motion for a mistrial is left to the sound discretion of the trial court. See State v. Smidi (1993),88 Ohio App.3d 177, 183-184.
 {¶ 31} Appellant claims that the prosecution in this case engaged in a pattern of misconduct aimed at getting into evidence previously-barred prior statements of missing witnesses, and that this conduct was pervasive and prejudicial to appellant's right to a fair and reliable trial.
 {¶ 32} The first instance of alleged misconduct took place during the following exchange, when the prosecutor asked Ector how she was notified of the shooting:
 {¶ 33} "Q: I'm going to direct your attention to February 2nd, 2007. Did anything unusual happen to your daughter Shontae Hill?
 {¶ 34} "A: Yes.
 {¶ 35} "Q: What happened to her?
 {¶ 36} "A: She got shot in her thigh.
 {¶ 37} "Q: Okay. How were you made aware that she was shot?
 {¶ 38} "A: They called me and told me my daughter got shot by her so-called boyfriend. *Page 11 
 {¶ 39} "[Defense Counsel]: Objection. Move to strike.
 {¶ 40} "The Court: Objection sustained. The jury will disregard the witness's statement about what she was told."
 {¶ 41} Shortly after this exchange, defense counsel sought a mistrial on the basis that the statements were prejudicial and that the error could not be cured by a curative instruction.
 {¶ 42} Appellant contends that the prosecutor "was on notice" that any response from Ector to the question, "What happened to your daughter," was only going to draw a hearsay response, and thus deny appellant the right to confront the witnesses against him. We disagree.
 {¶ 43} The question was not an improper question and we do not find that it was designed to elicit an improper answer. Moreover, the trial court, in addition to immediately sustaining the objection and advising the jury to disregard the answer, later gave an instruction advising the jury that "[statements or answers that were stricken by the court or which you were instructed to disregard are not evidence and must be treated as though you never heard them." Because the jury is presumed to follow the trial court's instructions, State v. Raglin (1998),83 Ohio St.3d 253, 264, we presume that the jury followed this instruction in its deliberations and based its conviction upon the evidence alone.
 {¶ 44} On the basis of the foregoing, it is our conclusion that the prosecutor's question did not prejudicially affect appellant's substantive rights. We additionally find *Page 12 
that the trial court did not abuse its discretion in denying appellant's related motion for mistrial.
 {¶ 45} Appellant next argues that the prosecutor made improper statements and comments during closing arguments. The first alleged improper statement occurred during the state's rebuttal argument, when the prosecutor suggested that the victim, Shontae Hill, was not present in trial because she did not want to see her boyfriend get in trouble for shooting her. Defense counsel immediately objected, and the trial court sustained the objection and admonished the jury to disregard the prosecutor's comment. Shortly after this admonition, the prosecutor stated that the victim did not come to court because she did not want appellant convicted. Once more, defense counsel objected, and, once more, the court sustained the objection and instructed the jury to disregard the prosecutor's argument.
 {¶ 46} At the conclusion of the prosecutor's remarks, defense counsel made a motion for mistrial based on the objected to remarks and on the prosecutor's final statement that, "* * * it's reasonable to infer that if [appellant] didn't shoot her, she'd be here saying it wasn't Basil." The trial court denied the motion, stating,
 {¶ 47} "The objections were sustained. I don't believe that it requires granting a mistrial at this point. I believe the jury can follow the instructions."
 {¶ 48} We note, in our examination of this assignment of error, that the trial court later instructed the jury that closing arguments are not to be considered evidence. As indicated above, the jury is presumed to follow the trial court's instructions. See State v. *Page 13 Raglin (1998), 83 Ohio St.3d at 264. Again, we presume that the jury followed this instruction in its deliberations and based its conviction upon the evidence alone.
 {¶ 49} We additionally note that defense counsel, in his closing, made his own remarks concerning the reasons for Hill's absence, stating:
 {¶ 50} "[The prosecutor] has suggested that maybe there are some reasons why he would like you to believe that Shontae Hill did not show up. But let me suggest to you also that it's reasonable to consider that maybe Shontae Hill did not show up because she felt pressured by Detective Cooper, by Prosecutor Herr, to put this off on Basil Morales when what happened * * * wasn't really the way they're suggesting it happened."
 {¶ 51} Defense counsel went on to suggest that the testimony of Hill and of one Donica Perrin, thought to have been present at the time of the shooting, might well have been beneficial to appellant.
 {¶ 52} In light of the foregoing we find that even if the challenged remarks constituted improper argument — and we do not specifically find that they were — they did not prejudicially affect appellant's substantive rights. We likewise find that the trial court did not abuse its discretion when it denied the associated motion for mistrial.
 {¶ 53} For all of the foregoing reasons, appellant's second and third assignments of error are found not well-taken.
 {¶ 54} Finally, in his fourth assignment of error, appellant argues that he is entitled to a reversal of his conviction because, when viewed cumulatively, the otherwise harmless errors that were committed in the trial court deprived appellant of a fair trial. *Page 14 
 {¶ 55} We have stated that "although a particular error by itself may not constitute prejudicial error, the cumulative effect of the errors may deprive a defendant of a fair trial and may warrant the reversal of his conviction." State v. Hemsley, 6th Dist. No. WM-02-010, 2003-Ohio-5192, ¶ 32, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "`However, in order even to consider whether "cumulative" error is present, we would first have to find that multiple errors were committed in this case.'" Id., at ¶ 32, quotingState v. Madrigal, 87 Ohio St.3d 378, 398, 2000-Ohio-448. In light of our findings with respect to the other assignments of error, we find appellant's fourth assignment of error not well-taken.
 {¶ 56} The judgment of the trial court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 15 
Peter M. Handwork, J. Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] A nolle prosequi was entered on the second count of the indictment. *Page 1