OPINION
{¶ 1} Defendant-appellant, Shawn W. Martin, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On December 29, 2004, appellant was indicted for four counts of rape, in violation of R.C. 2907.02, committed against S.S.,[1] his girlfriend's daughter. Counts 1 and 2 of the indictment alleged that appellant engaged in cunnilingus with S.S. sometime between December 15, 2002 and December 14, 2003, when S.S. was under the age of 10. Counts 3 and 4 of the indictment alleged that appellant engaged in the same conduct with S.S. sometime between December 14, 2003 and December 14, 2004, when S.S. was under the age of 13, and under force or the threat of force. Appellant entered a not guilty plea and proceeded to a jury trial.
 {¶ 3} S.S., 11 years old at the time of trial, testified that appellant lived with her and her mother for a couple of years in an apartment at the Pines at the Creeks Edge apartment complex in Columbus, Ohio. She testified that appellant began sexually abusing her in that apartment. She testified that appellant "touched me in certain places that I didn't want to be touched." The touching occurred in her mother's bedroom. S.S. explained that she would lay down at the end of the bed and appellant would be on the floor on his knees. She also testified that appellant touched her vagina with his hands, and that the touching made her feel "weird and uncomfortable." S.S. did not tell anyone about the abuse because she was afraid that appellant would hurt her or her family. However, S.S. later told her mother about appellant's conduct. The mother and S.S. then moved out of the apartment.
 {¶ 4} The state also presented testimony from Kerri Marshall, a social worker who interviewed S.S. at Columbus Children's Hospital on November 8, 2004. Ms. Marshall testified that S.S. told her that appellant forced her to pull down her pants and would lick her private parts. S.S. also told Ms. Marshall that appellant said crazy stuff and warned her that he would hit her if she did not pull her pants down. S.S. told Ms. Marshall that this happened too many times to count. Gail Hornor, a nurse who examined S.S. at Children's Hospital, testified that S.S. did not show signs of physical trauma and that S.S. tested negative for sexually transmitted diseases. According to Ms. Hornor, the absence of evidence of physical trauma is not unusual in sexual abuse cases.
 {¶ 5} After the state presented its evidence, it sought leave to amend Counts 1 and 3 of the indictment to allege that appellant engaged in digital vaginal penetration instead of cunnilingus. Over appellant's objection, the trial court granted the state's request and amended the indictment. Appellant did not present any evidence or testimony. The jury found appellant guilty of all counts, and the trial court sentenced appellant accordingly.
 {¶ 6} Appellant appeals and assigns the following errors:
I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS CONTAINED IN A SOCIAL WORKER'S REPORT CONTRA EVIDENCE RULE 803(4).
III. THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY AGAINST THE DEFENDANT, DENYING HIM HIS RIGHT TO CONFRONT WITNESSES AGAINST HIM CONTRA THE UNITED STATES AND OHIO CONSTITUTIONS.
IV. THE TRIAL COURT ERRED BY ALLOWING THE STATE TO AMEND THE INDICTMENT DURING THE TRIAL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 7} For clarity purposes, we will address appellant's assignments of error in reverse order. In his fourth assignment of error, appellant contends the trial court erred by allowing the state to amend his indictment during trial. We disagree.
 {¶ 8} Pursuant to Crim.R. 7(D), a court may, before, during, or after a trial, amend an indictment, provided no change is made in the name or identity of the crime charged. A trial court's decision allowing an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the accused can demonstrate prejudice. State v.Honeycutt (July 5, 2002), Montgomery App. No. 19004. If an amendment does not change the name or identity of the crime charged, we review the trial court's decision under an abuse of discretion standard. State v. Kittle, Athens App. No. 04CA41,2005-Ohio-3198, at ¶ 13; State v. Beach, 148 Ohio App.3d 181,2002-Ohio-2759, at ¶ 23, appeal not allowed, 96 Ohio St.3d 1516,2002-Ohio-4950. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 9} The amendment in this case changed the sexual conduct alleged in counts one and three from cunnilingus to digital vaginal penetration. Amending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense. State v. Smith,
Franklin App. No. 03AP-1157, 2004-Ohio-4786, at ¶ 11; State v.Hickman, Summit App. No. 20883, 2002-Ohio-3406, at ¶ 39-42 (amendment of rape charge from fellatio to cunnilingus). Accordingly, we must determine whether the trial court's decision to allow the amendment was an abuse of discretion. Kittle,
supra. Because S.S. testified that appellant touched her vagina with his hand, the trial court did not abuse its discretion by allowing the amendment of the indictment from cunnilingus to digital vaginal penetration.
 {¶ 10} When an amendment is allowed that does not change the name or identity of the offense charged, the accused is entitled to a discharge of the jury or a continuance, "`unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made.'" Honeycutt, quoting Crim.R. 7(D). Appellant does not allege that he was misled or that the amendment prejudiced him or his case. Nor does he explain what, if anything, counsel would have done differently if the state had not amended these charges. Absent prejudice, appellant was not entitled to a continuance or a discharge of the jury. In any event, appellant did not request a discharge of the jury or a continuance but, instead, chose to proceed with the trial. Therefore, appellant waived any alleged error relating to the trial court's failure to discharge the jury or to grant a continuance. State v. Gondek (Jan. 26, 2000), Medina App. No. 2928-M.
 {¶ 11} Because the trial court did not abuse its discretion by allowing the amendment of appellant's indictment, and because appellant failed to demonstrate any prejudice, appellant's fourth assignment of error is overruled.
 {¶ 12} Appellant's second and third assignments of error both address certain hearsay testimony. Therefore, we will address these assignments of error together.
 {¶ 13} Ms. Marshall interviewed S.S. at the hospital. Several other people, including a nurse practitioner, a case worker from Franklin County Children Services, a mental health advocate, and a detective from the Columbus Police Department watched the interview in real time on closed-circuit television. Ms. Marshall explained that this procedure allows the child to be interviewed only once, thereby minimizing any trauma that might result from numerous interviews. She also explained that the purpose of the interview was to gather medical information for the nurse practitioner to treat the victim and to make a medical diagnosis. Ms. Hornor, the nurse who later examined S.S., also testified that the purpose of the interview is to help make a medical diagnosis and to formulate a treatment plan. The factual history obtained through the interview allowed Ms. Hornor to determine whether or not to test S.S. for sexually transmitted diseases.
 {¶ 14} During the interview, S.S. made many statements about her abuse. S.S. described how appellant forced her to pull down her pants and lick her front private parts. She also described how appellant forced her to engage in this conduct. Appellant would say "crazy stuff" or would threaten to punch her if she did not pull her pants down. S.S. said that this happened "too many times to count." S.S. also told Ms. Marshall that appellant french-kissed her. Over appellant's objection, the trial court allowed Ms. Marshall to repeat S.S.'s statements pursuant to the hearsay exception found in Evid.R. 803(4), which allows the introduction of hearsay statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations."
 {¶ 15} Appellant contends in his second assignment of error that Ms. Marshall's testimony was improperly admitted pursuant to Evid.R. 803(4) because S.S.'s statements were not made for purposes of medical diagnosis or treatment. We disagree.
 {¶ 16} A trial court has broad discretion to determine whether a declaration should be admissible under a hearsay exception. State v. Dever (1992), 64 Ohio St.3d 401, 410. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v.Finnerty (1989), 45 Ohio St.3d 104, 107.
 {¶ 17} S.S. testified that she went to the hospital and "got checked, and then we talked about what he did." Ms. Marshall testified that the purpose of her interview with S.S. was to obtain information for the medical staff to treat S.S. and to make a proper medical diagnosis. Ms. Hornor testified that she performed tests for chlamydia and gonorrhea on S.S. based on the history of oral-genital contact described by S.S. to Ms. Marshall. Thus, S.S.'s statements to Ms. Marshall were made for the purpose of medical diagnosis or treatment. The fact that other people, including a detective from the Columbus Police Department, watched the interview in real time did not change the purpose of the interview. S.S. was not aware that the other people were watching the interview. See State v. Edinger,
Franklin App. No. 05AP-31, 2006-Ohio-1527, at ¶ 63-64 (statements child made to social worker interviewing child for medical treatment and diagnosis properly admitted, even with police detective observing through closed-circuit television). Because S.S.'s statements to Ms. Marshall were made for the purpose of medical diagnosis or treatment, the trial court did not abuse its discretion by admitting those statements.
 {¶ 18} Appellant contends in his third assignment of error that the introduction of S.S.'s statements violated his constitutional right to confront witnesses. Again, we disagree.
 {¶ 19} In Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. Id. at 68. Therefore, the threshold issue we must determine is whether or not S.S.'s statements are testimonial. State v. Crager, Marion App. No. 9-04-54,2005-Ohio-6868, at ¶ 28.
 {¶ 20} While the Supreme Court in Crawford deferred to a later day an exact definition, it noted that at a minimum, "testimonial" statements included prior testimony at a preliminary hearing, before a grand jury or at a former trial, and statements made during police interrogations. Crawford. It would also include statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Id. Appellant contends that S.S.'s statements were testimonial because she was a person claiming to be a crime victim and she described the crimes. We disagree.
 {¶ 21} Statements made by child abuse victims to medical providers are normally not testimonial. See, e.g., State v.Sheppard, 164 Ohio App.3d 372, 2005-Ohio-6065, at ¶ 30;Edinger, at ¶ 82; In re D.L., Cuyahoga App. No. 84643,2005-Ohio-2320, at ¶ 20. In this case, we conclude that S.S.'s statements were not testimonial. S.S. made her statements while she was interviewed by a social worker at Columbus Children's Hospital. The social worker did not work for the state or a governmental agency. See Edinger, at ¶ 63. Additionally, the purpose of the interview was to gather information for the hospital's medical staff to treat S.S., not to investigate acts of alleged sexual abuse. Crawford, (testimonial statements include those made under police questioning). Although other people, including a detective from the Columbus Police Department, watched the interview, there is nothing in the record that would demonstrate that S.S. was ever aware that these people were watching the interview. Edinger. There is also nothing in the record to conclude that S.S., at the time only ten years old, would have realized that her statements would be available for use at a later trial. Id. at ¶ 90 (finding it "highly doubtful" that a six year old had any idea that her statements would be preserved for use at a later trial) (Travis, J., concurring).
 {¶ 22} Because S.S.'s statements were not testimonial, their introduction did not violate appellant's constitutional right to confront witnesses. Even if S.S.'s statements were testimonial, we note that S.S. testified at trial. When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of that witness's prior testimonial statements. Crawford, at 59, fn. 9; Sheppard, at ¶ 31.
 {¶ 23} Because the trial court did not err by admitting the statements S.S. made to Ms. Marshall, and because those statements did not violate appellant's constitutional right to confront witnesses, appellant's second and third assignments of error are overruled.
 {¶ 24} Lastly, in his first assignment of error, appellant contends that his convictions were not supported by sufficient evidence and were also against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each.
 {¶ 25} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus.
 {¶ 26} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982),70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 27} Appellant first contends the state did not present sufficient evidence that S.S. was less than ten years old when the acts alleged in counts one and two occurred. We disagree. S.S. was born on December 15, 1993. She was 11 years old and entering the sixth grade when she testified at appellant's trial in the summer of 2005. She testified that appellant lived with her and her mom at the Pines at Creeks Edge apartment when she was eight, nine, or ten years old. She also testified that the abuse began when she was living at the Pines apartment when she was in the third or fourth grade, and that the abuse continued from one grade to another, probably stopping in fourth grade. She did not repeat any grades.
 {¶ 28} S.S.'s testimony is sufficient to conclude that she was less than ten years old when the abuse occurred in counts one and two. S.S. was 11 and entering the sixth grade in the summer of 2005. She did not repeat any grades. This means that she would have been ten when she entered fifth grade in 2004, nine when she entered fourth grade in 2003, and eight when she entered third grade in 2002. S.S. testified that the abuse began in one grade and ended in the next grade. She also testified that the abuse began when she was either in the third or fourth grade but that it probably ended when she was in the fourth grade. Viewing her testimony in a light most favorable to the state, a reasonable juror could conclude that the abuse began when S.S. was in the third grade, when she was eight or nine, and thus, younger than ten years old.
 {¶ 29} Next, appellant contends the state did not present sufficient evidence that he engaged in sexual conduct with S.S. We disagree.
 {¶ 30} Sexual conduct is defined in R.C. 2907.01 to include: "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 31} Counts 1 and 3 alleged that appellant digitally penetrated S.S.'s vagina. Appellant contends that S.S. never testified that he penetrated her. S.S. did testify, however, that appellant touched her "in certain places" and that one of those places was her vagina. She testified that he touched her with his hand. S.S. also testified that appellant's touching made her feel uncomfortable. This evidence, viewed in a light most favorable to the state, is sufficient for a reasonable juror to conclude that appellant digitally penetrated S.S's vagina.
 {¶ 32} Counts two and four alleged that appellant engaged in cunnilingus with S.S. Appellant contends the only evidence to prove that he engaged in cunnilingus with S.S. was the inadmissible hearsay testimony of Ms. Marshall. We have previously determined, however, that the trial court properly admitted Ms. Marshall's testimony. Her testimony repeated S.S.'s statements that described how appellant licked her vagina. This testimony is sufficient for a reasonable juror to conclude that appellant engaged in cunnilingus with S.S.
 {¶ 33} Lastly, appellant contends the state did not present sufficient evidence that he compelled S.S. to submit to sexual conduct by force or the threat of force. We disagree. Force is defined in R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The force and violence necessary to commit a rape depends upon the age, size and strength of the parties and their relation to each other. The same degree of force and violence may not be required upon a person of tender years, as would be required if the parties were more nearly equal in age, size, and strength. State v. Eskridge (1988), 38 Ohio St.3d 56, at paragraph one of the syllabus; see, also, State v. Schaim
(1992), 65 Ohio St.3d 51 ("A threat of force can be inferred from the circumstances surrounding sexual conduct.").
 {¶ 34} The Supreme Court of Ohio revisited the issue of force necessary for a rape in State v. Dye (1998), 82 Ohio St.3d 323. In that case, the court dealt with a defendant who was in a position of authority over a child under the age of 13. In such a case, evidence of an express threat of harm or evidence of significant physical restraint was not required to convict the defendant of rape with force. The court noted that "`[a]s long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" Id. at 327, quoting Eskridge. The evidence the court found sufficient to find that Dye forcibly raped his victim included: the position of authority he held over his nine year old victim; the fact that the victim's mother told the victim that Dye was in charge and he should listen to him; and that Dye told his victim not to tell anyone of the sexual abuse. Id.
 {¶ 35} In the present case, appellant lived with S.S. and her mother for three years and held some sort of position of authority over S.S. The fact that appellant was not S.S.'s natural father is irrelevant. Dye, at 329. S.S.'s mother testified that a father-daughter relationship existed between the two. Appellant would step in and discipline S.S. if she would not listen to her mother. Ms. Marshall testified that S.S. told her that appellant would force S.S. to pull her pants down when he engaged in cunnilingus. S.S. told Ms. Marshall that appellant would say crazy stuff and tell her that he would hit her if she did not pull her pants down. S.S. testified that appellant told her not to tell anyone about what he did to her. She did not tell anyone about the rapes because she was afraid that appellant would hurt her or her mother. This testimony is sufficient, when viewed in a light most favorable to the state, for a reasonable juror to conclude that appellant compelled S.S. to submit to sexual conduct by force or the threat of force. Therefore, appellant's convictions are supported by sufficient evidence.
 {¶ 36} A manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v.Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction."' Id.
 {¶ 37} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams,
Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 38} The jury heard testimony from S.S. and the social worker who interviewed S.S. Their testimony described acts constituting offenses of rape. This testimony described how appellant touched S.S.'s vagina and how he engaged in cunnilingus, through the use of some level of force or the threat of force. The jury was able to observe the demeanor of these witnesses and to gauge their credibility. The jury obviously chose to believe their testimony that appellant engaged in these acts of rape. We cannot say that the jury clearly lost its way when it convicted appellant of four counts of rape. This is not such an exceptional case in which the evidence weighs heavily against the conviction. Other defendants have been convicted for rapes of a child without direct testimony from the child specifically describing the offense. Sheppard, supra (child-victim would not describe rapes; psychological counselor's testimony describing child's statements described rapes). Appellant's convictions are not against the manifest weight of the evidence.
 {¶ 39} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.
 {¶ 40} Having overruled appellant's four assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 Brown and McGrath, JJ., concur.
[1] To protect the victim's identity, we will use her initials throughout this opinion.