[Cite as *State v. Hairston*, 2016-Ohio-8495.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-1013 |
| v. | : | (C.P.C. No. 13CR-2125) |
| Vent L. Hairston, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2016

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Steven L. Taylor,* for appellee.

**On brief:** *Barnhart Law Office LLC,* and *Robert B. Barnhart,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Vent L. Hairston ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of kidnapping and two counts of rape. Because the trial court did not abuse its discretion in allowing amendment of the indictment, and because there was no abuse of discretion or plain error in allowing a police officer to testify regarding the 12-year-old victim's statements, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 19, 2013, the grand jury indicted appellant with one count of kidnapping and five counts of rape, with a specification that the victim was under 13 years of age. The indictment alleged that the victim, F.M., was 12 years old at the time and that the offenses occurred on April 5, 2013. Originally, the counts of rape alleged the following

sexual conduct: digital vaginal penetration (Count 2), digital anal penetration (Count 3), cunnilingus (Count 4), anal intercourse (Count 5), and fellatio (Count 6).

{¶ 3}   Before trial, pursuant to Crim.R. 7(D), the trial court granted the state's motion, over appellant's objection, to amend Count 6 to allege that the sexual conduct was vaginal intercourse rather than fellatio. (Aug. 24, 2015 Tr. Vol. I at 13.) Trial commenced on August 24, 2015.  The trial testimony showed that, on April 5, 2013, L.M. reported to Columbus Police that her 12-year-old daughter, F.M., was missing. (Tr. Vol. I at 234.) The family had been playing at a park near Nelson Rd. and Fifth Ave. in Columbus, Ohio. L.M. noticed that F.M. was missing when the family got ready to leave. (Tr. Vol. I at 80, 237.) Police arrived on the scene and tried to help. (Tr. Vol. I at 238.)  Despite the use of police dogs and a helicopter, they were unable to locate the missing child. (Tr. Vol. I at 82, 86.)

{¶ 4}   Around midnight, L.M. received a call from F.M., via a phone number that L.M. did not recognize. (Tr. Vol. I at 239-44.)   F.M. did not state her location but L.M. could hear a man in the background, and F.M. handed the phone to him. The man identified himself as Vent Hairston. (Tr. Vol. I at 240-44.)  L.M. did not know him. (Tr. Vol. I at 243.)   Appellant told L.M. over the phone that he was with her daughter, and he gave the location of where they were and said that she could be picked up. (Tr. Vol. I at 240-42.)  He said that F.M. was okay. (Tr. Vol. I at 242.)

{¶ 5}   When L.M. reached the location, she did not immediately see her daughter, but then F.M. and appellant, whom L.M. identified in court, came walking around a corner. (Tr. Vol. I at 244-45.) F.M. looked shaken up and was in tears. (Tr. Vol. I at 244-46.) F.M. hugged her mom and said she was sorry for leaving the park. L.M. said it was not F.M.'s fault and exclaimed "[t]hank God." (Tr. Vol. I at 245.) Appellant then responded, "[t]hank God she is fine" and turned around and walked away.  (Tr. Vol. I at 245.) F.M. did not say anything until they were back in the car. F.M. was crying and shaking when she told L.M. what had happened to her. As a result of those disclosures, L.M. called the police. (Tr. Vol. I at 246.)

{¶ 6}   Officer Robert Griffin responded to the convenience store parking lot at the corner of Westerville Rd. and Thornapple Way at approximately 1:00 a.m. (Tr. Vol. I at 99-101.) He talked to F.M. and described her emotional state: "She seemed somewhat stunned. She had sort of a flat affect. She seemed timid. She seemed almost shellshocked."

(Tr. Vol. I at 102.) Defense counsel objected to the introduction of F.M.'s statements to the police officer but the court overruled the objection on the grounds that the statements were an excited utterance. F.M. told the police officer that she had been picked up by a man in a van after she left the park to go to a nearby convenience store to get something to drink. (Tr. Vol. I at 108.) The man drove her to an apartment and sexually assaulted her through vaginal and anal penetration with his penis. (Tr. Vol. I at 108, 114.) She also reported that she took a shower at the man's direction. (Tr. Vol. I at 116.) She described the man as an older black male who is short, thin, bald, with a goatee and moustache, wearing a purple suit and purple shoes, and said his name was Vance. (Tr. Vol. I at 116-17, 121.) The officer drove F.M. around the area and she identified a van and an apartment. (Tr. Vol. I at 123.) The officer then took her to Nationwide Children's Hospital.

{¶ 7} At Nationwide Children's Hospital, F.M. was interviewed by licensed independent social worker Sarah Saxbe. (Tr. Vol. I at 153.) Saxbe was permitted to testify to the disclosures made by F.M. over defense counsel's objection. (Tr. Vol. I at 181-83.) F.M. was tearful when she disclosed that she was sexually assaulted by a man who was a stranger. (Tr. Vol. I at 182, 198.) Saxbe testified that F.M. disclosed that the man penetrated her vagina and anus. (Tr. Vol. I at 182-83.) She also disclosed that the man put his mouth on her genitals and breasts and butt. (Tr. Vol. I at 190.)

{¶ 8} Theresa Warnimont is a sexual assault nurse examiner who also examined F.M. She also testified to F.M.'s disclosures over objection. F.M. disclosed vaginal and anal penetration and that the man put his mouth on her genitals and licked her breasts. (Tr. Vol. II at 326-28.) Warnimont examined and photographed F.M. and noted internal and external injuries to her vagina and anus. (Tr. Vol. II at 333-40.) Warnimont collected rape-kit evidence during the examination, including swabs from the vagina and anus. (Tr. Vol. II at 339-44.) F.M.'s clothing was also collected, including her underwear. (Tr. Vol. II at 339-40.)

{¶ 9} Lead Detective David Bobbitt testified that appellant lived at the address pointed out by F.M. and that the van she identified was also registered to him. (Tr. Vol. II at 469, 504.) Bobbitt served a search warrant on appellant's home and collected DNA from him. (Tr. Vol. II at 487-97.) Detective Bobbitt found a purple suit in appellant's home. (Tr. Vol. II at 492.) He also took custody of the rape-kit evidence for preservation

and submitted it for comparison to appellant's known DNA sample. (Tr. Vol. II at 484-87, 497-501.)

{¶ 10} David Ross testified that he is a forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI"). (Tr. Vol. III at 523.) He conducted testing of the rape-kit evidence in search for the presence of bodily fluids, primarily looking for evidence of semen. (Tr. Vol. III at 529-30.) Initial testing of the vaginal swab from the rape kit for F.M. confirmed the presence of a bodily fluid, but was inconclusive as to whether the substance was or was not semen. (Tr. Vol. III at 530-31, 538-44.) On the anal swab, Ross's results indicated trace amounts of semen. (Tr. Vol. III at 545.) Trace amounts of semen were also found on F.M.'s underwear. (Tr. Vol. III at 552.)

{¶ 11} Devonie Herdemann, another BCI forensic analyst, compared the DNA found in the anal swabs and underwear to appellant. (Tr. Vol. III at 602-05.)  The analysis found that the DNA in the anal swab contained F.M.'s DNA and a male profile, but the sample was not strong enough to include or exclude appellant. (Tr. Vol. III at 602.) However, the DNA found in the underwear was a match for appellant. (Tr. Vol. III at 605.)  The expected frequency of the occurrence of this DNA profile consistent with appellant from the underwear is one in 1,734,000,000,000,000,000 unrelated individuals. (Tr. Vol. III at 606; State's Ex. G-2.)

{¶ 12} On August 31, 2015, the jury returned guilty verdicts as to Count 1 (kidnapping), Count 5 (rape - anal intercourse), and Count 6 (rape - vaginal intercourse), along with the age specifications. (Oct. 7, 2015 Jgmt. Entry at 1.) The jury returned not guilty verdicts to the other three rape counts. *Id.*

{¶ 13} On September 16, 2015, the trial court sentenced appellant to 10 years to life in prison on Count 1, and 25 years to life on Counts 5 and 6. The sentence on Count 1 was to be served consecutively to the concurrent sentences on Counts 5 and 6 for a total sentence of 35 years to life in prison.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant appeals, assigning the following errors:

> [I.] THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO AMEND COUNT SIX OF THE INDICTMENT BEFORE TRIAL.

[II.] THE TRIAL COURT IMPROPERLY ADMITTED TESTIMONIAL HEARSAY EVIDENCE.

## III. STANDARD OF REVIEW

{¶ 15} An appellate court "review[s] a trial court's decision to permit the amendment of an indictment under an abuse-of-discretion standard. To constitute reversible error, [the defendant] must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense." *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, ¶ 23 (1st Dist.). An abuse of discretion connotes more than an error of law or judgment; it connotes a decision that was arbitrary, unconscionable, or unreasonable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 16} Hearsay exceptions are reviewed for an abuse of discretion. *State v. Dever*, 64 Ohio St.3d 401, 410 (1992). "[A] trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). Thus, a "trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *Dever* at 410.

{¶ 17} A question of whether a statement violates the Confrontation Clause is reviewed de novo. *State v. Durdin*, 10th Dist. No. 14AP-249, 2014-Ohio-5759, ¶ 15.

## IV. ASSIGNMENT OF ERROR ONE

{¶ 18} Crim.R. 7(D) discusses the amendment of indictments: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶ 19} The Ohio Constitution guarantees the right to have an indictment presented to the grand jury: "[N]o person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Constitution, Article I, Section 10.

{¶ 20} Appellant argues that the trial court violated appellant's right to a grand jury under Ohio Constitution, Article I, Section 10, because the trial court improperly allowed

the state to amend Count 6 of the indictment before trial from alleging rape by fellatio to rape by vaginal intercourse. (Tr. Vol. I at 9-13.) Defense counsel objected on general grounds and the specific ground, stating "[t]hat's almost like or akin to a subsequent charge being added that was not presented to the grand jury in this case. If you want to charge a guy with an offense, due process requires that that evidence be presented to a grand jury to make that determination, not a substitution." (Tr. Vol. I at 11.)

{¶ 21} Appellant recognizes that this court allowed a similar amendment in *State v. Smith*, 10th Dist. No. 03AP-1157, 2004-Ohio-4786. In *Smith*, this court found no error where the trial court allowed the state to change the sexual conduct at issue from fellatio to digital vaginal penetration. *Id.* at ¶ 15. However, appellant argues that *Smith* did not analyze the question from the perspective of the right to a grand jury and should be reconsidered for that reason.

{¶ 22} The state argues that appellant fails to show an abuse of discretion or prejudicial error warranting reversal, because provided there is no change in the "name or identity of the crime charged," Crim.R. 7(D) allows the trial court to amend the indictment at any time before, during, or after trial, with respect to any defect, imperfection, or omission in form or substance or with respect to any variance in the evidence. The state notes that this court and other courts have already held that an amendment changing a rape count from one form of sexual conduct to another is allowed under Crim.R. 7(D).

{¶ 23} Appellant acknowledges that *Smith* allows such an amendment under Crim.R. 7(D). Subsequent cases from this court have agreed with *Smith,* holding that "[a]mending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense." *State v. Abdullah*, 10th Dist. No. 05AP-1316, 2006-Ohio-5412, ¶ 24; *State v. Martin*, 10th Dist. No. 05AP-818, 2006-Ohio-2749, ¶ 9 (no abuse of discretion allowing such amendment.). The Second District followed this line of cases in *State v. Jones*, 2nd Dist. No. 26289, 2015-Ohio-4116, ¶ 126, holding that the indictment could be amended from one type of "sexual contact" to another type. Likewise, the Eighth District in *State v. Steele*, 8th Dist. No. 101139, 2014-Ohio-5431, ¶ 30, upheld as "properly made" an amendment of the "sexual conduct" involved in rape to "vaginal intercourse" from "anal intercourse." In accordance

with our case law, the amendment of Count 6 from "fellatio" to "vaginal intercourse" did not change the name or identity of the offense and was proper.

{¶ 24} In addition, the outcome of this issue does not change when it is reviewed as a constitutional matter. As recognized by the Second District in *Jones* at ¶ 124, quoting *State v. Strozier,* 2d Dist. No. 14021 (Oct. 5, 1994), " 'Crim.R. 7(D) embodies the protections guaranteed in Section 10, Article I, of the Ohio Constitution.' " That court rejected the constitutional challenge to the amendment from one type of "sexual contact" to another type, emphasizing that the "amendment did not change the penalty or degree of the offense" and "the State was still required to prove, and did in fact prove, that Jones had 'sexual contact' " with the victim. *Jones* at ¶ 129. The Supreme Court also has recognized that the rule complies with the constitutional provision. " 'As long as the state complies with Crim.R. 7(D), it may cure a defective indictment by amendment, even if the original indictment omits an essential element of the offense with which the defendant is charged.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 69, quoting *State v. Pepka,* 125 Ohio St.3d 124, 2010-Ohio-1045, ¶ 15. In addition, this court has rejected a constitutional challenge to this kind of amendment in *Martin* at ¶ 7-11, denying the assignment of error that asserted that the amendment was constitutional error. The rule operates in a manner consistent with the constitutional protection. By complying with the rule, the state complies with the constitutional protection as well.

{¶ 25} Further, there was no showing of prejudice that would indicate an abuse of discretion. The claim of vaginal intercourse had been present in the discovery provided to appellant. Appellant contended that there was no type of sexual conduct at all. There is no prejudice when the defense theory denying the occurrence of any sexual conduct can still be pursued. *Abdullah* at ¶ 26. Appellant fails to show a constitutional violation, or a prejudicial abuse of discretion warranting reversal. Appellant's first assignment of error is overruled.

## V. ASSIGNMENT OF ERROR TWO

{¶ 26} Testimony of hearsay is generally prohibited by Evid.R. 802. However, Evid.R. 803(2) sets forth the hearsay exception for excited utterances, which are defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Substantial time frames

are tolerated in this context, especially when the declarant is a child. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 169; *State v. Wallace*, 37 Ohio St.3d 87, 90-91 (1988). Statements by sexually assaulted children have been upheld "even when made after a substantial lapse of time" because "children are likely to remain in a state of nervous excitement longer than would an adult." *State v. Taylor*, 66 Ohio St.3d 295, 304 (1993).

{¶ 27} The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," but that statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Therefore, even if a statement falls under a hearsay exception it can be excluded as testimonial because such statements violate the Confrontation Clause. However, nontestimonial statements would be admissible under a hearsay exception.

{¶ 28} Appellant argues that the trial court improperly allowed Officer Griffin to testify about F.M.'s statements because (1) the statements were not excited utterances, and (2) even if the statements were excited utterances, they were testimonial and their admission violated the Confrontation Clause. Appellant argues that the basis for the trial court's conclusion that the statements were excited utterances was the police officer's testimony that F.M. "seemed somewhat stunned. She had sort of a flat affect. She seemed timid. She seemed almost shellshocked." (Tr. Vol. I. at 102.) Appellant argues that, since F.M. displayed a flat affect, she was not in a period of nervous excitement and, therefore, her statements were not excited utterances.

{¶ 29} In addition, appellant asserts that, at the time the statements were made, there was no ongoing emergency because F.M. had been returned to her family and was in a police cruiser driving around to obtain information about the suspect. Therefore, appellant argues that the primary purpose of the officer's questions was to obtain

information for later prosecution and, as such, the statements are testimonial and should have been excluded.

{¶ 30} Finally, appellant argues that he was prejudiced by the admission of F.M.'s statements to police because her statement that she was driven in a van to an apartment formed the basis of appellant's kidnapping conviction and, therefore, without that information, the jury would have no evidence to conclude that appellant was responsible for removing her from the park. (Tr. Vol. I at 108.)

{¶ 31} The state notes that appellant did not preserve a Confrontation Clause objection to this evidence. When Griffin began to specifically describe F.M.'s statements, appellant objected on grounds that no foundation had been laid for an excited utterance exception to the hearsay rule. (Tr. Vol. I at 105.) Appellant did not make any Confrontation Clause objection. In response, the prosecutor noted that F.M. was still affected by the immediacy of events. The court noted that an excited utterance can occur even a day after the startling event and that the foundation can be established through the statements themselves and that no specific time limit applies. (Tr. Vol. I at 106.) The court concluded that the statements related to startling events and that the foundation had been laid that F.M. was shell-shocked and still under the stresses of the trauma of the situation. (Tr. Vol. I at 107.) The state argues that the trial court did not abuse its discretion in overruling the objection based on the excited utterance exception, and that there was no plain error regarding any Confrontation Clause issue.

{¶ 32} In regards to an excited utterance hearsay exception, "[a] declarant's failure to react in a fashion completely dominated by hysteria and shock should not automatically render a statement inadmissible as an excited utterance." *State v. Hoagland*, 12th Dist. No. CA83-02-014 (Mar. 19, 1984.) The relative lack of outward emotion is not necessarily calm but rather shock, and "a statement made while in shock is an excited utterance." *Maggard v. Ford Motor Co.,* 320 F.Appx. 367, 375 (6th Cir.2009), citing *Haggins v. Warden*, 715 F.2d 1050, 1058 (6th Cir.1983).

{¶ 33} The startling events here would have been overwhelming for a 12-year-old girl. She had just undergone kidnapping at the hands of a sex offender and repeated rapes over the course of a number of hours, suffering external and internal injuries. The victim's statements about the initial transportation to the apartment was part of the chain of

startling events over which the victim, who had only been released by her abductor moments before her statements to the police officer, would still be suffering stress. The statements described those events so as to be admissible excited utterances. The court did not abuse its discretion in finding that the statements were admissible.

{¶ 34} The next question is whether or not F.M.'s statements were testimonial or nontestimonial. As argued by the state, appellant did not preserve a Confrontation Clause objection to the statements. Appellant only objected on hearsay grounds. "Objection on one ground does not preserve other, unmentioned grounds." *State v. Wallace*, 10th Dist. No. 08AP-2, 2008-Ohio-5260, ¶ 25. Moreover, a criminal constitutional question may not be raised on appeal "unless it is presented and urged in the court below." *State v. Williams*, 51 Ohio St.2d 112, 117 (1977). As a result, appellant has waived all but plain error. *State v. Jordan*, 10th Dist. No. 06AP-96, 2006-Ohio-6224, ¶ 22.

{¶ 35} While statements to a police officer can qualify as "testimonial" under the line of cases beginning with *Crawford*, such statements can also be nontestimonial in regard to ongoing emergencies and other circumstances if the defendant has not shown that the primary purpose was to create an out-of-court substitute for trial testimony. *Ohio v. Clark*, _ U.S. _ , 135 S.Ct. 2173, 2179-81 (2015).

{¶ 36} In this case, the situation had emergency implications based on safety and medical concerns. The police needed to assess the level of the potential danger to the public by determining what crimes had occurred and how they occurred. The questioning by Officer Griffin occurred just minutes after the victim had been "released," and while the appellant was still unknown and at large. It would have appeared to the police that the offender had abducted the victim, held her for several hours, and sexually assaulted her. This behavior indicated a possible continuing danger and called for quick questioning to ascertain exactly what had happened. The need to address the victim's potentially serious injuries can also be relevant in dealing with an ongoing problem. In fact, the victim needed medical assistance because of the rapes and the danger of sexually transmitted diseases. Given these circumstances, appellant cannot show that the primary purpose was to create a substitute for in-court testimony. In fact, the information in the record supports admissibility because of the safety and medical circumstances involved in the case.

{¶ 37} As stated in *State v. Campbell*, 69 Ohio St.3d 38, 41 (1994), fn. 2, "[o]ur cases make clear that we will not overturn a conviction for alleged error not raised below, unless it amounts to plain error."   "[T]he lack of a 'plain' error within the meaning of Crim.R. 52(B) ends the inquiry and prevents recognition of the defect." *State v. Barnes*, 94 Ohio St.3d 21, 28 (2002).  In *Barnes* at 27, the court stated that the plain error analysis begins with three criteria: (1) there must be "a deviation from a legal rule"; (2) the defect must be "obvious"; and (3) the error "must have affected the outcome of the trial." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 96 (1978).

{¶ 38} Recent cases have confirmed that the prejudice prong under the plain error standard focuses on whether the outcome clearly would have been different. In *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 120, quoting *State v. Adamson*, 72 Ohio St.3d 431, 434-35 (1995), quoting *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990), the court said that " ' "[p]lain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." ' "

{¶ 39}   In the present case, appellant cannot satisfy the obvious error, outcome determination, and manifest miscarriage of justice prongs of the plain error analysis. Appellant cannot show obvious error under the Confrontation Clause in the introduction of F.M.'s statements by Officer Griffin.

{¶ 40} Finally, the introduction of F.M.'s statements about transportation were harmless given that the kidnapping statute allows conviction when the removal or restraint is by any means. R.C. 2905.01(A). No matter what means appellant used to get the victim from where she went missing to where she was found miles away and hours later, appellant was guilty of kidnapping.  In addition, there was overwhelming evidence that appellant raped F.M., as shown by the internal injuries and the presence of his semen on her underwear. The record supports the view that the jury still would have convicted appellant on the same counts, and that no manifest miscarriage of justice occurred. Appellant's second assignment of error is overruled.

## VI. DISPOSITION

{¶ 41} Having overruled appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J. and SADLER, J., concur.

————————————